UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ETDO PRODUCTIONS, LLC**,<br><br>Plaintiff,<br><br>v.<br><br>**ALFREDO CRUZ, MICHELE ROSSI, MICHELE HUDAK, MARISA NAQUIN, SONYA BOURGEOIS, LISETTE BAYLE, RENEE PASTOR**, and **DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB**,<br><br>Defendants.<br><br>**DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB**,<br><br>Counterclaimant,<br><br>v.<br><br>**ETDO PRODUCTIONS, LLC**, **JERRY LENAZ**, and **FRANCOIS CAMENZULI**,<br><br>Counter-Defendants. | **CIVIL ACTION NO. 19-CV-13184-ILRL-DMD**<br><br>**JUDGE IVAN L.R. LEMELLE**<br><br>**MAGISTRATE JUDGE DANA M. DOUGLAS** |

### DEFENDANTS AND COUNTERCLAIMANT'S RESPONSE TO PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' STATEMENT OF UNCONTESTED MATERIAL FACTS FILED WITH ITS MOTION FOR SUMMARY JUDGMENT

Defendant and Counterclaimant, **DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB**, and Defendants, **ALFREDO CRUZ**, **MICHELE ROSSI**, **MICHELE HUDAK**, **MARISA NAQUIN**, **SONYA BOURGEOIS**, **LISETTE BAYLE**, and **RENEE PASTOR**, (collectively "Defendants," "Disco Amigos," or "DASAPC") by and through undersigned counsel, hereby submit this response to the Statement of Uncontested Material Fact*s* [Doc. 47-2] filed with Motion For Summary Judgment [Doc 47] of Plaintiff, **ETDO PRODUCTIONS, LLC**

-2-

(hereinafter "Plaintiff"), and Third-Party Defendants, **JERRY LENAZ** and **FRANCOIS CAMENZULI** (hereinafter collectively referred to as "Third-Party Defendants").

1. The phrase "Disco Amigos" was coined by Francois Camenzuli on November 16, 2011 during a trip to the Macy's Parade in New York City.

    **Response:** Denied, Third-Party Defendants' only evidence of this statement is a self-serving affidavit.

2. The logo of a disco ball with horns and nose ring was created by Jerry Lenaz on February 15, 2012.

    **Response:** Denied, Third-Party Defendants' only evidence of this statement is a self-serving affidavit.

3. On November 21, 2011, Mr. Lenaz posted a video of a van called the "El Toro De Oro" Tour on the Disco Amigos Facebook page.

    **Response:** Admitted.

4. On November 26, 2011, Mr. Lenaz posted a picture of a van with bull horns and a bull ring on the Disco Amigos Facebook which was the inspiration for the Disco Amigos logo.

    **Response:** Admitted only to the fact that Mr. Lenaz posted a picture to Facebook.

5. Mr. Lenaz created the Disco Amigos logo which appears here on or about February 15, 2012.

    **Response:** Denied.

6. Mr. Lenaz purchased the domain www.discoamigos.com on November 16, 2011.

    **Response:** Denied.

7. Mr. Lenaz opened a twitter account on November 16, 2011 under the name "Disco Amigos" and started using the hashtag #ETDOvan meaning, El Toro de Oro.

**Response:** Denied.

8. The Facebook page "Disco Amigos" was created on November 16, 2011.

**Response:** Denied.

9. The social media pages were used to solicit performers and book gigs.

**Response:** Denied, ETDO has not presented any evidence in discovery showing that they obtained performers and booked gigs prior to May 16, 2012, in any capacity other than that of Disco Amigos. All members have indicated that at all times they believed they were joining Disco Amigos Social Aid and Pleasure Club. *See* Declarations of Denny Bro, Ellen Ulf, Aimee Kornhauser and Kerry Kenney.

10. On February 10, 2012, Andrea Heming was the treasurer of Noisician Coalition and hired Disco Amigos to support her group in the Krewe of Muses on February 16, 2012 in exchange for $250.00.

**Response:** Denied, Defendants requested evidence supporting this allegation in Defendants' Request For Production Of Documents, in which Plaintiffs responded with "None." *See* Plaintiff's Response to Request For Production No. 24.

11. On February 16, 2012 the Disco Amigos led by Jerry Lenaz drove the El Toro de Oro during the parade and performed in the parade.

**Response:** Admitted.

12. On February 16, 2012, a video was posted showing the use of the Disco Amigos logo, name and flag during the Krewe of Muses Parade.

**Response:** Denied.

13. The van had the horns and the Disco Amigos logo attached. Mr. Lenaz made the flag from an iron-on t-shirt and the pattern of the logo he created.

**Response:** Denied.

14. That same day at 7:19 p.m. a tweet on Twitter from the Disco Amigos page stated that Disco Amigos' El Toro De Oro van was rolling with the Noisician Coalition with Jerry Lenaz at the helm in the Krewe of Muses.

**Response:** Denied.

15. On March 26, 2012, Mr. Lenaz posted the first Facebook cover page for Disco Amigos, a photo of an instructional record for disco dancing.

**Response:** Denied.

16. On March 28, 2012 Jerry Lenaz posted content on the GoogleSites website www.discoamigos.com soliciting dancers and performers to attend their first practice on April 12, 2012 at the Rendon Inn. Mr. Lenaz solicited membership fees in exchange for the participation of the dancers.

**Response:** Denied, Third-Party Defendants act of soliciting dancers and performers were for the benefit of Disco Amigos, not Third-Party Defendants personally.

17. On April 12, 2012 the first practice was held for "Disco Amigos" at the Rendon Inn and payment of membership fees were solicited.

**Response:** Denied, Third-Party Defendants were soliciting membership fees to join Disco Amigos, not for the personal benefit of Third-Party Defendants. Membership dues checks were made out to "Disco Amigos", as members believed they were joining the Disco Amigos Social Aid and Pleasure Club. *See* Declaration of Denny Bro, Article 5 and 7.

18. On May 2, 2012, T-shirts with the logo and name Disco Amigos were purchased for $182.88 by Francois Camenzuli.

**Response:** Denied, Disco Amigos reimbursed Francois Camenzuli for the purchase of the

T-shirts with the name and logo of Disco Amigos. *See* Declaration of Denny Bro, Article 9 and 10.

19. On May 3, 2012 A tweet from the Disco Amigos twitter page was posted to "check out Disco Amigos at the corner of Mystery St and Maurepas behind Santa Fe. Come see the van! #eltorodeoro" in order to solicit interested performers and/or book gigs.

    **Response:** Admitted.

20. On May 5, 2012, Disco Amigos held an event "Cinco de Disco" with a Disco Amigo member from Virginia.

    **Response:** Denied, Third-Party Defendants have provided no proof that this person from Virginia was a member of Disco Amigos.

21. Mr. Lenaz and Mr. Camenzuli formed the "Disco Amigos Social Aid and Pleasure Club" (the "Non-Profit") on May 16, 2012.

    **Response:** Admitted.

22. Mr. Lenaz and Mr. Camenzuli granted the Non-Profit implied licenses without consideration which allowed it to use their respective trademarks and intellectual properties: namely the trademark phrase "Disco Amigos" coined by Mr. Camenzuli and the logo designed by Mr. Lenaz.

    **Response:** Denied. *See* Declarations of members and board members, Denny Bro, Ellen Ulf, Aimee Kornhauser, and Kerry Kenney.

23. Disco Amigos Social Aid and Pleasure Club operated as a 501c7 nonprofit, marched in parades, performed in other events and held parties.

    **Response:** Admitted.

24. On January 15, 2015, the corporation ETDO Productions, LLC ("ETDO") was formed

consisting of Jerry Lenaz, Francois Camenzuli, Bruce Lin, and John Tiblier and filed Articles of Organization with the Secretary of State.

**Response:** Admitted.

25. That same day, ETDO received an assignment from Jerry Lenaz and Francois Camenzuli of the intellectual property rights for the phrase "Disco Amigos" and the Disco Amigos logo.

**Response:** Denied, Third-Party Defendants never owned the intellectual property, thus they could not assign their rights in the intellectual property to any person and/or entity. The document produced by plaintiff was not notarized or signed by any witnesses, nor was it every produced prior to the instigation of the instant lawsuit. See Declarations of Denny Bro, Ellen Ulf, Aimee Kornhauser and Kerrey Kenney, stating that they were never aware or told that Third-Party Defendants assigned the intellectual property rights to any entity.

26. ETDO entered into agreements to provide services including equipment, music, talent, Disco Amigo performers, production, sound, disco balls, and lighting with various customers such as the American Diabetes Association, Kira Hess, Girls on the Run, Crescent Crown Distributing and JC Ellis Elementary.

**Response:** Denied, the board members were never made aware that ETDO was entering into agreements to provide Disco Amigo appearances and charging appearance fees for Disco Amigos. See Declaration of Denny Bro, Article 25.

27. ETDO also provided services to the Non-Profit including the van, equipment, music, talent, Disco production, sound, disco balls, and lighting at discounted and under market rates.

**Response:** Denied, Disco Amigos paid ETDO $9,800.00 for the 2016-2017 season and $12,000.00 for the 2017-2018 season. *See* Declaration of Michele Rossi. Third-Party Defendants claimed to be providing equipment at under market rates, yet when asked to provide proof, they

failed to provide a study or raw data. *See* Declaration of Michelle Hudak. Furthermore, the board of Disco Amigos believed they were being overcharged for services form ETDO and ETDO's equipment was ill maintained and often broken down. *See* Declaration of Marisa Naquin, Article 14. *See also* Declaration of Denny Bro, Article 22-24, whereby Girls on the Run did not hire ETDO a second time as they were charging above market rates.

28. ETDO entered into agreements with the Non-Profit regarding its professional services which required monthly payments in exchange for professional services including, equipment, vehicles, sound and lighting and labor.

**Response:** Admitted inasmuch production services were at one time contracted. ETDO failed to deliver upon its obligations under the agreements, as ETDO was to provide labor before and after parades, but instead used Disco Amigos members and their families as the labor and charged Disco Amigos for the labor. *See* Declaration of Michele Rossi. ETDO's equipment was not well maintained and Third-Party Defendants would pay for ETDO equipment out of the Disco Amigos treasury. *See* Declaration of Michele Rossi.

29. Discounts were given to the Non-Profit for committing to a year agreement. The agreement would continue until the agreement is terminated or until a new agreement is put in place. The contract did not specify what happens if one condition happens before the other and did not specifically state that the agreement terminates at the end of the year.

**Response:** Denied, in ETDO's Responses to Request for Admission 12 and 18, ETDO denied that Disco Amigos was to receive a 40% discount by agreeing to a one-year agreement. Furthermore, after Disco Amigos became dissatisfied with ETDO's services, Disco Amigos asked ETDO to provide a new production services agreement, which was never responded to by ETDO or Third-Party Defendants. *See* Declaration of Michele Rossi.

30.     ETDO continued to provide services to the Non-Profit beyond the one year term period and received monthly payments from the Non-Profit until 2019.

**Response:** Denied.  The board of Disco Amigos was dissatisfied with ETDO's services and asked for a new production services agreement, to no avail.  Furthermore, at a board meeting on September 26, 2018, Disco Amigos advised ETDO that the production services agreement would be from month to month going forward and there were to be no monthly payments and no advance payments by the board. *See* Declaration of Michele Rossi. ETDO and Third-Party Defendants made unauthorized payments from the Disco Amigos treasury.  ETDO's financial expert witness's report states that as of the date of his report, ETDO owes Disco Amigos $4,698.30, plus $5,600 for storage and usage fees that were not approved by the board.  *See* Declaration of Michele Rossi, Articles 13-16.

31.     ETDO was paid for its services in December 2018 which were past due payments owed for June-December 2018.

**Response:** Denied, ETDO's financial expert witness's report states that as of the date of his report, ETDO owes Disco Amigos $4,698.30, plus $5,600 for storage and usage fees that were not approved by the board.  *See* Declaration of Michele Rossi, Article 16.

32.     Kim Janowski and the Executive Committee authorized payments to ETDO on the past due amounts based on the Executive Committee's decision to pay past debts.

**Response:** Denied, Kim Janowski, and Third-Party Defendants could not authorize payments to ETDO, as it was a conflict of interest.  *See* Declaration of Michele Hudak.

33.     Kim Janowski and the Executive Committee authorized pre-payments to ETDO for future services and equipment that were upcoming shortly and ultimately used by the Non-Profit.

**Response:** Denied, in September of 2018, Disco Amigos advised ETDO that the

production services agreement would be on a month to month basis, there was no annual agreement for monthly payments and no advance payments were approved by the board. See Declaration of Michele Rossi. Due to conflicts of interests, Third-Party Defendants and Janowski could not authorize pre-payments to ETDO.  *See* Declaration of Michele Hudak.

34. The services provided by ETDO were under market rates and the contract could have been cancelled at any time with 45 days notice to ETDO.

**Response:** Denied, the services provided by ETDO were not under market rates, as other entities that used ETDO did not rehire ETDO a second time because their rates were more expensive than similar vendors.  *See* Declaration of Denny Bro, Article 24.

35. The Board of Directors of the Non-Profit is made up of 5 to 9 members, three of the board positions are required to be the Executive Committee.

**Response:** Admitted.

36. Both Mr. Lenaz and Mr. Camenzuli served on the Executive Committee of the Board of Directors for the Non-Profit throughout the existence of the NonProfit.

**Response:** Denied, Executive officers are to serve three-year terms under the Disco Amigos By-Laws.  Third-Party Defendants' terms ended as of August 31, 2019.  The current executive board consists of Michele Rossi, Marisa Naquin, and Michele Hudak.  *See* Declaration of Michele Rossi.

37. The Executive Committee was responsible for the day to day responsibilities that were not assigned to the Board of Directors and had the power to take any action by 2/3 vote.

**Response:** Denied as written.  Article 8.5.1 of the By-Laws of Disco Amigos state, "The executive committee may take action by a 2/3 vote."  Not that they can take any action by a 2/3 vote.  This means that any action they take must be authorized by a 2/3 vote.  Furthermore, Third-

Party Defendants were to recuse themselves on all votes having to do with ETDO, so any executive committee vote regarding ETDO that included Third-Party Defendants would be invalid and represent a conflict of interest. *See* Declaration of Michele Hudak.

38. Although the term for members on the Executive Committee was three years, each committee member could be reappointed or re-elected pursuant to Bylaw 8.3.1.

   **Response:** Admitted.

39. Francois Camenzuli was reappointed as interim Executive Committee member in 2018 and remains in that position for three years unless reappointed or re-elected.

   **Response:** Denied, when Francois Camenzuli's three year term ended in May of 2018, he was approved only to serve in an unspecified interim capacity on the executive committee for the 2018-2019 season, or until a replacement was nominated and approved by the board in accordance with the By-Laws of Disco Amigos. *See* Declaration of Michele Rossi.

40. Gerald "Jerry" Lenaz was reelected in 2016 for three years and remains a member of the Executive Committee until another board member could fill the position.

   **Response:** Denied, Third-Party Defendant, Jerry Lenaz's term as President/Treasurer of Disco Amigos ended at the end of the 2018-2019 season. Lenaz was replaced by President Michele Rossi and Treasurer, Marisa Naquin. *See* Declarations of Michele Ross and Marisa Naquin.

41. The bylaws contain no requirements for any of the officers of the Executive Committee to present a budget to the board.

   **Response:** Denied, since the first board meeting of Disco Amigos on June 11, 2013, it has been the practice of the Treasurer to prepare a budget. Minutes of the June 11, 2013 board meeting indicated that Treasurer Francois Camenzuli presented the 2013-2014 preliminary budget. Treasurer Jerry Lenaz was responsible for the budget of DASAPC during the 2018-2019 season.

As treasurer and lead of the finance committee Jerry Lenaz was responsible for calling meetings of the finance committee to assist with development of the budget. Official board meeting agenda from 6/18/14, 5/16/18, 6/27/18, 8/22/18, 9/26/18, 10/24/18, 1/23/19 show that Lenaz was "the lead" on budgets and budget reports. Most of the time, the budget items stayed in the Executive Committee "parking lot" of items that were to be pushed off into the future. *See* Declaration of Michele Rossi.

42. There is no requirement in the Bylaws for a budget.

   **Response:** Denied, see response to 41 above.

43. The board of directors has the power to handle fiscal matters pursuant to bylaw 7.4.1.4.

   **Response:** Denied, the board of directions has only approval power, not the power to act on financial matters.

44. The board of directors consists of more individuals than Jerry Lenaz and Francois Camenzuli - all of who had the power to present a budget or handle fiscal matters pursuant to bylaw 7.4.1.4.

   **Response:** Denied, see response to 41 above.

45. In 2019, the board of the Non-Profit came to a deadlock over the licensing agreement with ETDO.

   **Response:** Denied, there was never a deadlock of the board as claimed by ETDO. *See* Declaration of Marisa Naquin.

46. ETDO required a written licensing agreement for the name and logo and revoked the implied license given in 2012.

   **Response:** Denied, ETDO never owned the name and logo, thus they could not license or revoke a license for the name and logo.

47. While three members of the Non-Profit's board, who also comprise the Executive Committee of the Board, agreed that a license agreement with ETDO regarding the Non-Profit's use of the trademark was proper, the other five members disagreed and insisted that such an agreement was unnecessary.

**Response:** Denied, since Third-Party Defendants were required to recuse themselves on all votes regarding ETDO, they had to recuse themselves from any vote on a license agreement with ETDO.  *See* Declaration of Michele Hudak.

48. The Board could not and has not resolved the deadlock to this date.

**Response:** Denied, see response to 45.

49. The Executive Committee moved to dissolve the Non-Profit which is still pending in Civil District Court pursuant to Bylaw 8.5.1.

**Response:** Denied, the executive committee does not have the power to alone dissolve the organization. Pursuant to By-Law 7.4.2.2 and 7.5.2, this action is reserved to the board of directors and must be approved by a ¾ vote of the entire board.  *See* By-Laws of Disco Amigos.

50. Bylaw 7.4.1.2 requires that board meetings be called by the Executive Committee.

**Response:** Denied, By-Law 7.4.1.2 requires that board meetings meet quarterly as directed by the Executive Committee and when activities require. Therefore, under By-Law 7.4.1.2, board members can call board meetings when activities require.

51. To date, no board meeting has been called by the Executive Committee as it existed in January 23, 2019.

**Response:** Denied, a board meeting was held on July 25, 2019, minutes were taken and circulated to the board by executive committee member Kim Janowski.  The entire board of directors of Disco Amigos, including all executive committee members, attended a board meeting

on August 21, 2019. *See* Declaration of Michele Rossi.

52. In order to be on the Board of Directors, members must be in good standing by paying dues pursuant to Bylaw 7.2.3.

**Response:** Admitted.

53. Dues are to be paid annually pursuant to bylaw 9.3 between Mardi Gras and the start of the fiscal year, June.

**Response:** Disputed, dues are normally due annually at the beginning of the season on June 1. At the May 13, 2019 board meeting, the board decided to extend the 2018-2019 season (which ordinarily would have ended on May 31, 2019) through August 31, 2019. Members were given the option to pay dues on June 1, 2019 or wait until the start of the 2019-2020 season on September 1, 2019. The Executive Committee acknowledged this extension in an email from Francois Camenzuli to the board dated May 19, 2019. This was communicated to the members by Francois Camenzuli at the Awards Ceremony held on May 20, 2019. The practice of Disco Amigos has been to require payment of dues within 30 days of the start of the season to maintain status as a member in good standing. Therefore, dues for the 2019-2020 season were to be paid no later than September 30, 2019. *See* Declaration of Marisa Naquin.

54. No dues were paid by any board member except for Jerry Lenaz, Kim Janowski, and Francois Camenzuli for 2019.

**Response:** Denied, according to the membership data on Disco Amigos' Wild Apricot website, available to the board as of August 20, 2019, Executive Committee members Kim Janowski and Francois Camenzuli had not paid their dues as of June 1, 2019. *See* Declaration of Marisa Naquin.

55. The remaining board of directors did not pay dues by that date.

**Response:** See response to 53.

56. The five remaining board members began using the Disco Amigos name without permission from ETDO or about September 2019.

**Response:** Denied, Disco Amigos does not need permission from ETDO to use the name or logo, as it is not owned by ETDO. The nonprofit continues to use the Disco Amigos name, as it has since the inception of the nonprofit. *See* Declaration of Marisa Naquin.

57. A cease and desist was sent on September 11, 2019 to the individual defendants.

**Response:** Admitted.

58. Defendants began using the name "Disco Amigos" to solicit dues perform.

**Response:** Denied. The 501(c)7 continues to use the Disco Amigos name, as it always has. *See* Declaration of Marisa Naquin.

59. Members left the group due to confusion.

**Response:** Denied, the majority of the members of Disco Amigos have stayed members of the nonprofit. *See* Declaration of Marisa Naquin, Article 20.

60. Plaintiff was unable to perform in Krewe of Carrollton due to the confusion between the groups.

**Response:** Denied, ETDO's exhibit bates numbered 380-381 states that plaintiff was unable to perform in Krewe of Carrollton because it "was unable to put on the type of performance and engaging show you have come to expect from the Disco Amigos." This is because ETDO lacks members as the majority of DASAPC members remained with DASAPC.

**RESPECTFULLY SUBMITTED** this 25th day of August 2020.

/s/ *Thomas S. Keaty*
Thomas S. Keaty (#7666) – TA
KEATY LAW FIRM LLC
365 Canal Street, Suite 2410
New Orleans, Louisiana 70130
(504) 524-2100
tskeaty@keatypatentfirm.com

-and-

/s/ *Steven M. Hannan*
Steven M. Hannan (#33878)
Hannan, Giusti & Hannan L.L.P.
2201 Ridgelake Drive
Metairie, Louisiana 70001
(504) 831-5300
steven@hghlaw.com

*Attorneys for ALFREDO CRUZ, MICHELE ROSSI, MICHELE HUDACK, MARISA NAQUIN, SONYA BOURGEOIS, LISETTE BAYLE, RENEE PASTOR and DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 25, 2020 a copy of the above and foregoing DEFENDANTS AND COUNTERCLAIMAINT'S RESPONSE TO PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' STATEMENT OF UNCONTESTED MATERIAL FACTS FILED WITH ITS MOTION FOR SUMMARY JUDGMENT was served upon all known counsel of record via the Court's CM/ECF electronic filing system.

By: /s/ *Thomas S. Keaty*
 **THOMAS S. KEATY**