**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ETDO PRODUCTIONS, LLC,** | |
| Plaintiff, | |
| v. | |
| **ALFREDO CRUZ**, **MICHELE ROSSI**, **MICHELE HUDAK**, **MARISA NAQUIN**, **SONYA BOURGEOIS**, **LISETTE BAYLE**, **RENEE PASTOR**, and **DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB**, | **CIVIL ACTION NO. 19-CV-13184-ILRL-DMD** |
| Defendants. | **JUDGE IVAN L.R. LEMELLE** |
| **DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB**, | **MAGISTRATE JUDGE DANA M. DOUGLAS** |
| Counterclaimant, | |
| v. | |
| **ETDO PRODUCTIONS, LLC, JERRY LENAZ**, and **FRANCOIS CAMENZULI**, | |
| Counter-Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO COMPEL DISCOVERY RESPONSES AND FOR ENTRY OF A PROTECTIVE ORDER**

Defendants, **Disco Amigos Social Aid and Pleasure Club** ("Disco Amigos"), **Alfredo Cruz**, **Michele Rossi**, **Michele Hudak**, **Marisa Naquin**, **Sonya Bourgeois**, **Lisette Bayle**, and **Renee Pastor**, by and through their attorneys, respectfully submit this reply memorandum in support of both their Motions to Compel Discovery Responses [Doc. 48] and for Entry of a Protective Order [Doc. 61] in light of the Oppositions [Docs. 65, 71] of **ETDO Productions, LLC**, **Jerry Lenaz**, and **Francois Camenzuli** (collectively "Plaintiff"). Defendants aver as follows:

I.     **INTRODUCTION**

The procedural history underlying Defendants' Motions is straightforward: Defendants served their discovery requests on July 3, 2020 [Doc. 48-2] and Plaintiff provided incomplete responses thereto on August 3 and 10, 2020 [Doc. 48-3].[1]  Defendants' counsel sent detailed correspondence in good faith on August 21, 2020 to Plaintiff's counsel identifying the deficiencies in Plaintiff's discovery responses [Doc. 48-4], and to date, Plaintiff still has not responded in a meaningful way.  Instead, Plaintiff chose to oppose Defendants' Motions by arguing that the base Motion to Compel is premature and that Defendants' counsel did not properly meet-and-confer as required by Rule 37.  This is a red herring designed to distract attention from Plaintiff's inexcusable failure to cooperate in discovery in good faith.

As Defendants submitted in their Motions, and in Opposition [Doc. 70] to Plaintiff's Motion to Compel and for Sanctions [Doc. 59], many of the outstanding discovery issues stem from Defendants being prohibited access to Disco Amigos Social Aid and Pleasure Club's Google Suite/Google Drive (hereinafter "Google Suite/Drive" or "corporate database"), where Plaintiff deactivated Defendants' access without any legal authority – and yet Plaintiff alleges Defendants have equal access to documents that would have been found in said Google Suite/Drive.

Below, Defendants address the new arguments made by Plaintiff's Oppositions erroneously suggesting that Defendants were never denied access to the Google Suite/Drive.

## II.    ARGUMENT IN REPLY

### A.    Plaintiff is Attempting to Deceive the Court About the Google Suite/Drive.

At the heart of the controversy is Plaintiff's repeated denial of Defendants' requests for access to the Google Suite/Drive.  Plaintiff erroneously suggests that Defendants had access to it all along.  This is simply not true.

---

[1] Some of the discovery responses were filed under seal [Doc. 50].

Plaintiff deactivated Defendants' e-mail accounts and access to the Google Suite/Drive on September 20, 2019, the day they filed suit against Defendants in the Civil District Court for the Parish of Orleans.  *See*, Exhibit 1, Declaration of Marisa Naquin.  Prior to litigation, Defendants had full access to the corporate database.  Ex. 1.

On October 18, 2019, Plaintiff filed suit in this Court against Defendants based on the same claims they had asserted in state court.  It is indisputable that when Plaintiff intentionally cut off Defendants' access to the corporate database, they knew it contained materials directly relevant to the suits they filed and were about to file.  All of the discovery disputes herein are the direct result of Plaintiff's refusal, despite repeated requests, to restore access to the Google Suite/Drive.

1. *How the Sharing Feature in Google Suite/Drive works and how that applies to Defendants.*

The FAQ attached hereto as Exhibit 2 entitled *Share Files from Google Drive* explains the various options for controlling with whom files are shared.  For any Google Drive document or folder, sharing options are either (1) through  access granted to e-mail accounts, other than the @discoamigos.com e-mail addresses that were confiscated; or (2) by clicking on a link to documents that are available to anyone with a link to the document.  *See*, Ex. 1.

Thus, there are only two means through which Defendants can access a document that is located in the Google Suite/Drive:  (1) through previously shared access restricted to the Board or membership using e-mail accounts other than the @discoamigos.com e-mail addresses that were confiscated; or (2) by clicking on documents that are available to anyone with a link to the document.  *See*, Ex. 1.  Regardless, these accesses are controlled exclusively by Plaintiff.[2]

---

[2] Any claim by Plaintiff that they "own" the e-mail accounts or access to the Google Suite/Drive is untrue.  The sixty-dollar ($60) monthly fee paid to Google for use of the services is, or was at the time Defendants' access was confiscated, funded by DISCO AMIGOS membership dues.  *See*,  Ex. 1.

> 2.       *Defendants obtained access to the document entitled "Income Statement" through an unrestricted link on Wild Apricot, a website to which the entire DISCO AMIGOS membership was previously granted access.*

Defendants admit that they have access to an unrestricted document located on the Google Suite/Drive through the access that was granted by Jerry Lenaz to anyone with a link.  However, Plaintiff has mischaracterized that access by asserting that Defendants have unrestricted access to all items on the corporate database and have even shared that access with their attorneys.  That assertion is false.

The singular document submitted by Plaintiff in support of their argument is entitled "Income Statement, Disco Amigos, 1 June 2017 to 31 May 2018" [Doc. 65, p. 15] ("Income Statement").  Although the Income Statement is located in the Google Suite/Drive, Defendants did not obtain the Income Statement through direct access to the Google Suite/Drive.  *See*, Ex. 1.  Rather, a link to the Income Statement is embedded in another document, the August 22, 2018 DISCO AMIGOS Board meeting agenda/minutes ("August Minutes").  *See*, Exhibits 1 and 3.

The August Minutes are available on the DISCO AMIGOS Wild Apricot site.  Access to the DISCO AMIGOS Wild Apricot site and the August Minutes was previously granted to all DISCO AMIGOS members using e-mail accounts other than the confiscated @discoamigos.com e-mail addresses.  Ex. 1.  *See also,* Ex. 2, "Share with specific people."  The DISCO AMIGOS Wild Apricot site contains a limited number of documents, including Board meeting minutes, which constitute a small fraction of the items contained in the Google Suite/Drive.  *See*, Ex. 1.

The link to the Income Statement embedded in the August Minutes is accessed by clicking on the words "Review Budget."  *See*, Ex. 3.  Jerry Lenaz gave access to the Income Statement embedded in the August Minutes to anyone on the Internet with the link.  Ex. 1.  *See also* Ex. 2,

"Share a link to the file."  Therefore, when a DISCO AMIGOS member clicks on the words "Review Budget" in the August Minutes, the member is directed to the Income Statement, located in the Google Suite/Drive.  Ex. 1.  However, the member's access via the link is restricted to that document only.  Ex. 1.

Because Jerry Lenaz controls the firewalls in the Google Suite/Drive, he, more than anyone, is aware that Plaintiff's representation to the Court that "Defendants and its counsel already has access to the Google Suite/Drive account documents and has shared it with its attorneys" is a complete fallacy.  Doc 65, p. 13.

> 3. *Plaintiff created the illustrations in its Oppositions to misrepresent the facts regarding Defendants' access to the Google Suite/Drive.*

The illustrations, such as on pages 14 and 15 of Doc. 65, were purposely manipulated to give the impression that Michele Rossi, the other Defendants, and even their counsel have unrestricted access to the Google Suite/Drive.  The explanatory bubbles created by Jerry Lenaz suggest that Michele Rossi, who, along with the other Board members, was granted access to the Income Statement by Jerry Lenaz in 2018, somehow used that access to penetrate the entirety of the corporate database and view documents.  In reality, on August 8 and 13, 2020, Michele Rossi clicked on the link embedded in the August Minutes through her access to Wild Apricot, which brought her to the Income Statement, to which Jerry Lenaz has granted unrestricted access to anyone with a link.

The illustrations on the bottom of page 15 of Doc. 65 were designed by Plaintiff to make it appear that all of the listed individuals, including Defendants and their counsel, currently have access to the corporate database.  What the illustration on the bottom left of page 15 actually shows is the e-mail addresses of persons who have access to the Income Statement because Jerry Lenaz

gave access to them on August 18, 2020, subsequent to Michele Rossi's access of the document via the unrestricted link on the DISCO AMIGOS Wild Apricot site.

The blow-up of "Shared Access" created by Plaintiff on the bottom right of page 15 of Doc. 65, alleging to show that Defendants, their present and prior counsel, and certain other DISCO AMIGOS members currently have access to the Google Suite/Drive, is also a deception. In crafting the "Shared Access" list, Plaintiff selectively chose to display the names of Defendants and their past and present counsel, when in fact, all members of DISCO AMIGOS have access to the unrestricted Income Statement through the DISCO AMIGOS Wild Apricot site.  Contrary to the misleading representations of Plaintiff, no DISCO AMIGOS member, Board member, or their previous or current counsel has access to the corporate database.

In view of the above, Defendants respectfully re-urge their Motions, particularly to compel Plaintiff to restore Defendants' full access to the corporate database.

**B.      Defendants' Motion to Compel Is Not Premature.**

Plaintiff insists that Defendants' Motion to Compel is premature and that Defendants did not give Plaintiff an opportunity to meet-and-confer.  Plaintiff wants this Court to ignore the evidence – numerous communications to Plaintiff's counsel starting in April and continuing through August (including a telephone conference on May 14, 2020) requesting restoration of Defendants' access to the corporate database.  Plaintiff chose to ignore these requests until June 1, 2020, when Plaintiff's counsel responded with a categorical statement - "**It is our position that your clients do not represent Disco Amigos Social Aid and Pleasure Club**" [Doc. 48-9, p. 3, emphasis added].  Repeated requests thereafter brought zero response from Plaintiff and its counsel.  Not only Defendants were denied access to the corporate database, Plaintiff failed to properly respond to numerous discovery requests all the while having full access to the responsive

documents and information accessible through the corporate database.  Defendants were left with literally no choice but to file their Motion to Compel outlining problems with Plaintiff's discovery responses, and their Motion for a Protective Order.

### C.   Plaintiff's Objections to the Discovery Requests Should Be Overruled.

Turning now to particular objections, starting with Interrogatory Nos. 2 and 3, Plaintiff clearly contradicts itself: it wants to have privacy of its own representatives protected, while insisting that Defendants' suggestion for a separate "Attorneys Eyes Only" category violates the ethical rules.  Being mindful of the particular information being extremely sensitive, Defendants suggested adding another category, "Attorneys Eyes Only," which should properly protect the parties trade secret and other highly confidential information.  As stated in Defendants' Motion to Compel, Plaintiff counsel insisted that "the "Attorney's Eyes Only" edits may violate professional rules of conduct 1.4(b) regarding keeping the client informed".  However, protective orders of the type suggested by Defendants and having a separate category "Attorneys Eyes Only" have been routinely used in trademark trials before the Trademark Trial and Appeal Board of the U.S. Trademark Office and in the courts of various jurisdictions.[3]  Apparently, Plaintiff wants to have its own information protected, while denying that Defendants are entitled to the same level of protection.  Besides, any potential for public disclosure can be obviated by following the standard practice of filing documents in court "under seal."

Objection to Interrogatory No. 7 claims that Defendants and their counsel have access to the corporate database.  As addressed in detail above, Plaintiff created an illusion of accessibility by creating the images that are aimed to deceive the Court and Defendants.

---

[3]  *See Aging Backwards LLC v. Esmonde-White,* (S.D. Fla, CASE NO. 16-20758-CIV-LENARD/GOODMAN, Doc. 58), where the Court addressed this very issue and held that "Attorneys' Eyes Only" provisions in Confidentiality and/or Protective Orders are efficient and do not run afoul to the ethical rules governing attorneys. *See also* cases cited in this decision.

Objection to Interrogatory No. 8 suggests that Plaintiff "produced documents in lieu of a response and has submitted copies of checks received for each year it held sales in Request No. 31 which includes amounts, the person paid and the person paying, and even copies of the checks." However, it was the affirmative duty of Plaintiff to calculate its profits and sales for the years it claims it provided services to the public. The question is clear on its face, and it is a standard discovery request in trademark infringement cases, so Plaintiff should be obligated to provide full answers to the question. Plaintiff's objection should be overruled.

Plaintiff's objection to Interrogatory No. 9 should be overruled as well. Plaintiff suggests that "ETDO provided documents in lieu of a response." However, Federal Rules of Civil Procedure provide for distinct types of discovery tools – interrogatories and requests for production – and one cannot be substituted for another. Plaintiff should be ordered to fully answer Interrogatory No. 9.

Plaintiff's opposition to Interrogatory No. 10 apparently is not really an opposition. Plaintiff chose to provide a summary of its alleged losses instead of specifying the basis for each category of losses, such as what Mardi Gras contracts Plaintiff was forced to cancel and why, and did not provide the amount of damages for each. Plaintiff must supplement its responses forthwith.

In its objection to Interrogatory No. 14, Plaintiff repeats again its story about Defendants having access to the corporate database. As discussed in detail above and evidenced by the attached exhibits, this notion is a fiction, created for the purpose of misleading and confusing the Court. Defendants respectfully request that the objection be overruled.

Plaintiff's objection to RFP No. 2 insists that the request is overly burdensome. However, Plaintiff initiated this action claiming infringement and damages for lost contracts. Therefore, it

is Plaintiff's burden to prove that it is entitled to such damages by providing documents that would refer to its customers or potential customers. Defendants respectfully request that the objection be overruled.

In opposition to RFP No. 4, Plaintiff stated that "All advertisements and promotional materials are open to the public on the Disco Amigos Facebook, Twitter, and Webpage. ETDO has provided those that it has in its possession." As stated in the Motion to Compel, Plaintiff provided only four pages of documents. It is simply not credible that Plaintiff has only four pages of documents responsive to this request. If the complete information were available to Defendants, they would not have asked for it in the first place.

In its opposition to RFP No. No. 5, Plaintiff stated "the response is not deficient as that is all the responsive documents ETDO has in its possession." This statement should have been provided to Defendants last month, thus obviating the need for a motion.

Plaintiff opposes RFP No. 6 stating that "ETDO has already produced invoices, receipts and proof of payment related to customers and services it provided. ETDO will not produce 'other pertinent business records' without specifically knowing what kind of documents Defendants seek and the entry of a Confidentiality Agreement." This category of document requests is standard in trademark cases: the party alleging infringement or seniority of use is required to prove them by documentary evidence. As stated above, Defendants do no have access to the corporate database, much less to Plaintiff's documents. As to the Confidentiality Agreement, please refer to discussion of objections to Interrogatory No. 2.

In opposition to RFP No. 10, Plaintiff avoids answering the question – whether the contract with the Krewe of Carrollton is the only contract that Plaintiff claims as its damages. The Court

should overrule Plaintiff's objection and require Plaintiff to admit that this particular contract is the only contract for which Plaintiff intends to claim damages.

Regarding RFP No. 13, Defendants repeat that they did not have access to the corporate database because they were locked out of the accounts the day Plaintiff filed its state court action.

Regarding RFP No. 15, under Federal Rule 26(a)(2)(B)(iii), a written expert report <u>must contain</u> "any exhibits that will be used to summarize or support them." Plaintiff must supplement its "Designation of Expert and Expert Report" to contain true and correct copies of documents actually reviewed by their expert, Mr. Luby.

Regarding RFP No. 23, Plaintiff should immediately restore Defendants' access to the corporate database as the handful of documents simply do not add up to the allegations of this lawsuit, where, for example, Plaintiff alleges a license since 2012.

Regarding RFP No. 31, Plaintiff again repeats its story about Defendants' access to the corporate database. Because this is not true, Plaintiff should be ordered to restore this access forthwith.

Regarding RFP No. 34, Plaintiff's objection pertains to confidentiality of the documents. As addressed above, Plaintiff had an option of signing a stipulated protective order with an "Attorneys Eyes Only" designation or disclosing all requested documents and information.

With regards to RFP Nos. 35,40, 42, 45, 46, and 48, Plaintiff again repeats its story about Defendants' access to the corporate database. Because this is not true, Plaintiff should be ordered to restore this access forthwith. As to the Confidentiality Agreement referred to in objections to RFP No. 46 and 47, please see Defendants' arguments in relation to Interrogatory No. 2.

D.     **Defendants Motion for a Protective Order Should Be Granted.**

In its Opposition to Defendants' Motion for a Protective Order, Plaintiff repeats again its arguments made in its Motion to Compel and its Opposition to Defendants' Motion to Compel, essentially complaining that Defendants did not provide a valid reason for their reluctance to have the deposition taken on August 31, 2020, and that Defendants have had access to the corporate database during discovery.   Defendants fully addressed the reasons of Defendants inability to appear for the deposition in their Motion for a Protective Order and do not wish to impose on the Court's time repeating the same here.   Defendants also addressed the illusion of accessibility created by Plaintiff for the purpose of misleading the Court regarding the corporate database.

Turning now to the newly presented Plaintiff's responses to objections, with regard to categories 1, 2, 4, and 5, Plaintiff again insists that it is willing to enter into the Confidentiality Agreement created by Magistrate North.   With all due respect to Magistrate North, that Confidentiality Agreement does not have the second layer of protection that is afforded by the Protective Order Agreement having "Attorneys Eyes Only" category.   On the other hand, the agreement suggested by Defendants is much more suited to the facts of this case [Doc. 48-10].

As to category 3, the market study, which Plaintiff alleges was created by Michael Atwater, it is baffling why Plaintiff had not provided Defendants with a copy of that study instead of creating this controversy.   Clearly, Plaintiff was in possession of that documents and could have simply given a copy of it to Defendants.

With regard to categories 6, 9, 11-14, 16-20, and 21, Defendants incorporate in full their position on the Confidentiality Agreement stated above in relation to categories 1, 2, 4, and 5.   The same is true for the issue of access to the corporate database.

As to category 7, Defendants respectfully repeat that the entire controversy could have been avoided had Plaintiff and defendants signed a Protective Order with "Attorneys' Eyes Only" insert.

As to category 8, Plaintiff has not demonstrated a substantial need for this type of information. Absent such showing, Defendants respectfully request that the Court sustain their objection.  Under the majority or broad view, communications pertaining to the insured's potential liability covered by the policy are protected by the privilege because they are deemed to be made in connection with the legal defense of a claim that the insurer is required to provide under the terms of the policy.  *See*, Lee R. Russ in consultation with Thomas F. Segalla, 17 COUCH ON INSURANCE 3d § 250:19 ; *American Special Risk Ins. Co. v. The Greyhound Dial Corp.*, No. 90 Civ. 2066, 1995 WL 442151 at *2 (S.D.N.Y. July 26, 1995) (postclaim disclosures of facts necessary to establish potential liability constitute disclosures in pursuit of legal representation and are privileged, even if there may appear to be a conflict of interest between the insured and the insurer).

As to category 10, the use of the term "any and all discussions, responsibilities… " makes the category confusing and open-ended.  Plaintiff should be required to clarify the topic before the deposition.

As to category 15, the term "any and all communication, by or on behalf of the Defendant" render this category indefinite and open ended.  Plaintiff should be ordered to revise the topic to be more specific.

**WHEREFORE,** Defendants pray that their Motions to Compel [Doc. 48]  and for a Protective Order [Doc. 61] be granted.

**RESPECTFULLY SUBMITTED** this 9th day of September 2020.

/s/ *Thomas S. Keaty*
Thomas S. Keaty (#7666) – TA
KEATY LAW FIRM LLC
365 Canal Street, Suite 2410
New Orleans, Louisiana 70130
(504) 524-2100
tskeaty@keatypatentfirm.com

-and-

/s/ *Steven M. Hannan*
Steven M. Hannan (#33878)
Hannan, Giusti & Hannan L.L.P.
2201 Ridgelake Drive
Metairie, Louisiana 70001
(504) 831-5300
steven@hghlaw.com

*Attorneys for ALFREDO CRUZ, MICHELE ROSSI, MICHELE HUDACK, MARISA NAQUIN, SONYA BOURGEOIS, LISETTE BAYLE, RENEE PASTOR and DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on  September 9, 2020 a copy of the above and foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTIONS TO COMPEL DISCOVERY RESPONSES AND FOR ENTRY OF A PROTECTIVE ORDER was served upon all known counsel of record via the Court's CM/ECF electronic filing system.

By: /s/ *Thomas S. Keaty*
**THOMAS S. KEATY**