**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ETDO PRODUCTIONS LLC**                          **CIVIL ACTION**

**VERSUS**                                        **NO. 19-13184**

**ALFREDO CRUZ, ET AL**                           **SECTION "B"(3)**

<u>**ORDER AND REASONS**</u>

Plaintiff ETDO Productions, LLC and Third-Party Defendants Jerry Lenaz and Francois Camenzuli filed a motion for summary judgment. Rec. Doc. 47. Defendant timely filed an opposition. Rec. Doc. 51.

For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 47) is **DENIED.**

<u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

On October 18, 2019, Plaintiff ETDO Productions, LLC ("ETDO") filed this suit, seeking declaratory relief to be named as rightful holder of the trademark "Disco Amigos" and logo and to request an injunction to stop further use of the trademark and logo by Defendants Alfredo Cruz, Michelle Rossi, Michelle Hudak, Marisa, Naquin, Sonya Bourgeois, Lisette Bayle, Renee Pastor, and Disco Amigos Social Aid and Pleasure Club ("The Non-Profit"). Rec. Doc. 1. ETDO brings additional claims against Disco for trademark infringement and dilution, unfair competition, and unfair business practices. Rec. Doc. 1.

On January 10, 2020, the Non-Profit filed its answer and counterclaim, asserting therein federal and state claims for unfair competition, false advertisement, injury to business repetition and negligent interference against ETDO. Rec. Doc. 30. Moreover, the Non-Profit asserted counterclaims against third-party defendants Francois Camenzuli ("Camenzuli") and Jerry Lenaz ("Lenaz") as members of the Non-Profit's Board of Directors and Executive Committee for breach of fiduciary duty and breach of the duty of care. Rec. Doc. 30. Specifically, with respect to the breach of fiduciary duty, Defendant alleged that Third Party Defendants (1) failed to step down after their term, (2) did not act on board resolutions, and (3) threatened to dissolve the board if an agreement was not reached on the trademark. Rec Doc. 47-1 at 10. With respect to the breach of duty of care claim, Defendant alleged that Third Party Defendants (1) failed to present a budget, (2) profited from the non-profit, (3) did not timely address financial matters, and (4) made payments to ETDO without board authorization. Rec. Doc. 30 at 41.

ETDO purports that Camenzuli coined the phrase "Disco Amigos" on November 16, 2011, and Lenaz designed the accompanying logo of a disco ball with horns and a nose ring on February 15, 2012. Rec. Doc. 1 at 6.

On May 16, 2012, Disco Amigos Social Aid and Pleasure Club was formed with Camenzuli and Lenaz as principal officers and board

members – both of whom continue to serve in this role. Rec. Doc. 1 at 7. According to ETDO, Camenzuli and Lenaz granted implied licenses to the Non-Profit on May 16, 2012, allowing the latter to use the trademarked phrase and logo. Rec. Doc. 1 at 8; Rec Doc. 47-4 at 3.

In 2015, Camenzuli and Lenaz founded and transferred their intellectual property rights to ETDO to manage the Non-Profit's assets and to ultimately maintain control over the Disco Amigos Brand. Rec. Doc. 1 at 2.

As the number of participating groups increased within the Non-Profit, both ETDO and the Non-Profit began to contemplate restructuring the organization and the use of the intellectual property. Rec. Doc. 1 at 3. Thus, according to ETDO, a proposal to sign a formal license agreement between ETDO and the Non-Profit was presented to the Non-Profit's Board of Directors. Rec. Doc. 1 at 8. However, the discussion came to a deadlock as five members of the Board - namely the defendants in the matter - found the agreement improper. Rec. Doc. 34-1 at 3. According to the Non-Profit, this was the first instance in which ETDO and the third-party defendants ever claimed ownership of the intellectual property. Rec. Doc. 51 at 6. Believing that the trademark belonged to the Non-Profit, the dissenting board members claimed that such a proposal was unnecessary. Rec. Doc. 34-1 at 3. The remaining three members disagreed and attempted to prevent the Non-Profit

from further use of the trademark until the license agreement could be resolved. Rec. Doc. 1 at 3. After an unsuccessful attempt to resolve the deadlock, ETDO asserts that Lenaz and Camenzuli revoked the implied licenses previously granted to the Non-Profit. Rec. 1 at 3. Nevertheless, the Non-Profit proceeded to use the intellectual property without ETDO's approval. Rec. Doc. 1 at 3.

Plaintiff and Third Party Defendants filed the instant motion for summary judgment, alleging that ETDO is the rightful owner of the "Disco Amigos" trademark and logo and the Non-Profit's unauthorized use of the trademark has caused a likelihood of confusion. Rec. Doc. 47-1 at 2, 6. Defendant filed a response in opposition, arguing that Camenzuli and Lenaz's mere "creative contributions" and single use of the mark is insufficient to establish ownership. Rec. Doc. 51 at 10. Moreover, as a result of the third party defendants' failure to respond to the Non-Profit's counterclaims, Defendant asserts that its allegations set forth against Camenzuli and Lenaz have been admitted as true. Rec. Doc. 51 at 10.

## LAW AND ANALYSIS

### a. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

5

**b. <u>Lanham Act Trademark Infringement Claim</u>**

Title 15 U.S.C. § 1125 prohibits any person from using in commerce "any word, term, name, symbol, or device. . .that is likely to cause confusion, or to cause mistake, or to deceive. . .as to the origin, sponsorship or approval of his or her goods. . .by another person *See* 15 U.S.C. § 1125(a). To successfully assert an infringement claim under the Lanham Act, the plaintiff must (1) establish ownership in a legally protectible mark and (2) prove infringement by demonstrating a likelihood of confusion. *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 235-36 (5th Cir. 2010) (citing *Bd. Of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)).

The pertinent issue in this case is the ownership of the "Disco Amigos" trademark and logo. In *Hana Financial*, the Court stated, "rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015); *see also Union Nat. Bank of Texas, Loredo, Tex. V. Union Nat. Bank of Texas, Austin, Tex.,* 909 F.2d 839, 842-43 (5th Cir. 1990) ("the first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark"). To establish

ownership, the party must prove it has (1) adopted the mark and (2) was used in a sufficiently public way that the public may identify the party as the adopter of the mark. *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975). The use requirement demands more than a party's mere conception or advertisement of the mark, but its sale of services to the public that was actually rendered. *Id; see also* 15 U.S.C. § 1127. The Fifth Circuit further provided, "even a single use in trade may sustain trademark rights if followed by continuous commercial utilization." *Id; see also Airs Aromatics, LLC, v. Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) ("the owner [of the common law trademark] must establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present").

In the instant case, Plaintiff believes itself to be the owner of the trademark because its alleged assignors Lenaz and Camenzuli were the first to use the mark at the Krewe of Muses Parade. Rec. Doc. 47-1 at 3. Plaintiff further argues that Lenaz and Camenzuli publicized "Disco Amigos" using the trademark on social media and merchandise to solicit gigs and membership dues all prior to the Non-Profit's formation. Rec. Doc. 47-1 at 3. By contrast, Defendant's argument is based on its contention that Lenaz and Camenzuli's sole use of the trademark is insignificant to establish

ownership because they failed to continuously use the mark thereafter. Rec. Doc. 51 at 11.

Because the Fifth Circuit has not spoken on trademark ownership disputes among board members of the same organization, Defendant relies on the *Lyons* case, which shares similar facts to the instant case. The relevant trademark in *Lyons* was used to name a veterinary specialist organization, and the plaintiff, who was an active member of its organizing committee, sought ownership of the mark by alleging first use through her various educational programs. *Lyons v. American College of Veterinary Sports*, 859 F.3d 1023, 1024-25 (Fed. Cir. 2017). Upon review of the plaintiff's claim, the Trademark Trial and Appeal Board established a three-part framework to determine ownership: "(1) the parties' objective expectations; (2) who the public associates with the mark; and (3) to whom the public looks to stand behind the quality of goods or services under the mark." *Id.* at 1026. The court affirmed the board's decision to reject the plaintiff's claim, finding that it was never the parties' collective intent to render the plaintiff's personal services under the trademark and that the public only associated the mark with the defendant's services and quality control. *Id.* at 1030-31.

Plaintiff offers the declarations of both Lenaz and Camenzuli, who both claim as prior owners of the mark to have

granted and later revoked an implied non-exclusive license to the
Non-Profit to use the "Disco Amigos" logo. Rec. Doc. 47-4 at 3;
Rec. Doc. 47-5 at 3. Plaintiff also provided the Court with a
collection of invoices issued by ETDO, containing a description of
what appears to be "Disco Amigos" services to various customers.
*See* Rec. Doc. 47-4 at 10-17.

By contrast, Defendant disputes the existence of the implied
license and offers the declarations of individuals, who were both
members of the Non-Profit and its board of directors, to support
its argument. *See* Rec. Doc. 51-2; Rec. Doc. 51-3; Rec. Doc. 51-5.
In the declarations, the members individually attested that they
joined the Non-Profit "with the understanding that [they were]
joining a social aid and pleasure club called 'Disco Amigos' as a
performer." *See* Rec. Doc. 51-2 at 3; Rec. Doc. 51-3 at 3; Rec.
Doc. 51-4 at 3; Rec. Doc. 51-5 at 3. During their respective terms
as board members, they claimed that they were never made aware of
Lenaz and Camenzuli's ownership claim, the alleged implied license
to the Non-Profit, and the alleged assignment agreement to ETDO.
*See* Rec. Doc. 51-2; Rec. Doc. 51-3; Rec. Doc. 51-5. They further
stated that it was not until September 3, 2019 when they were first
informed of the ownership claim in a membership email. Rec. Doc.
51-2 at 3; Rec. Doc. 51-3 at 4; Rec. Doc. 51-4 at 3; Rec. Doc. 51-
5 at 4. Rather, Defendant argues that by virtue of being the true
trademark owner, the Non-Profit was solely responsible for

providing "club services", including arranging performances and organizing events. Rec. Doc. 51 at 12.

The foregoing conflicting evidence show an existing material factual dispute, i.e. whether Plaintiff and Third Party Defendants continuously used the trademark in a manner that clearly informed the Defendant of their rights and established ownership of the "Disco Amigos" trademark and logo. Therefore, a genuine issue of material fact exists regarding the issue of trademark ownership that would preclude summary judgment.

New Orleans, Louisiana this 28th day of September, 2020

_____
SENIOR UNITED STATES DISTRICT JUDGE