**Jason Broecker**

| | |
|---|---|
| **From:** | Jason Broecker |
| **Sent:** | Tuesday, October 6, 2020 6:50 PM |
| **To:** | Jessica Vasquez |
| **Cc:** | Thomas Keaty; Bella Safro; Steven Hannan |
| **Subject:** | FW: Civil Action No. 19-13184 - Third Revision of Joint Proposed PTO |
| **Attachments:** | 20-1005-3D_REV_JOINT_PROPOSED_PTO-D19-4233.doc; 20-1005-REDLINE-3D_REV_JOINT_PROPOSED_PTO-D19-4233.doc |

Ms. Vasquez,

We have not heard from you and the deadline is today, and business is closing for the day; so the assumption is that no substantive changes are required for the joint sections. Please consider this confirmation that we withdraw our Objections to your Exhibits that are also included in our Exhibit list, as you noted, and that you may file the revised joint proposed pretrial order accordingly.


With kind regards,

Jason D. Broecker
Keaty Law Firm LLC
One Canal Place
365 Canal Street, Suite 2410
New Orleans, LA  70130
504-524-2100 – Office
504-524-2105 – Facsimile

Re: D19-4233

---

**From:** Jason Broecker
**Sent:** Monday, October 5, 2020 8:23 PM
**To:** Jessica Vasquez <jvasquez@vasquezlawoffice.com>
**Cc:** Thomas Keaty <tskeaty@keatypatentfirm.com>; Steven Hannan <steven@hghlaw.com>; Bella Safro <bsafro@keatypatentfirm.com>
**Subject:** Civil Action No. 19-13184 - Third Revision of Joint Proposed PTO

Ms. Vasquez,

Thank you for circulating, on Saturday evening, your revision of the joint proposed pretrial order.  We reviewed the revision and accepted all redline changes and complied with your comments (e.g., moving facts from uncontested to contested) to the best of our knowledge and ability, and then deleted the comments as they became moot.  From there, we made new redline edits for corrections, style, clarity and the like.  Attached are the clean copy and the redline of the revised joint proposed pretrial order.  In our opinion, it would be easier to redline the clean copy going forward.  We await your return revision.


With kind regards,

Jason D. Broecker

Exhibit 3

Keaty Law Firm LLC
One Canal Place
365 Canal Street, Suite 2410
New Orleans, LA  70130
504-524-2100 – Office
504-524-2105 – Facsimile

Re: D19-4233

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ETDO PRODUCTIONS, LLC,** | * |
| | * |
| Plaintiff, | * |
| | * **CIVIL NO. 19-CV-13184-ILRL-DMD** |
| v. | * |
| | * |
| **ALFREDO CRUZ, MICHELE ROSSI,** | * |
| **DISCO AMIGOS SOCIAL AID AND** | * **JUDGE IVAN L.R. LEMELLE** |
| **MICHELE HUDAK, MARISA NAQUIN,** | * |
| **SONYA BOURGEOIS, LISETTE BAYLE** | * |
| **RENEE PASTOR, and DISCO AMIGOS** | * |
| **SOCIAL AID AND PLEASURE CLUB,** | * |
| | * **MAG. JUDGE DANA M. DOUGLAS.** |
| Defendants, | * |
| | * |
| **DISCO AMIGOS SOCIAL AID AND** | * |
| **PLEASURE CLUB,** | * |
| | * |
| Counterclaimant, | * |
| | * |
| **ETDO PRODUCTIONS, LLC, JERRY** | * |
| **LENAZ,** and **FRANCOIS CAMENZULI,** | * |
| | * |
| Counter-Defendants. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## JOINT PROPOSED PRE-TRIAL ORDER

**MAY IT PLEASE THE COURT:**

The parties having conferred among themselves and with the Court pursuant to Federal Rule of Civil Procedure 16, and pursuant to the Pre-Trial Notice issued by the Honorable Ivan L.R. Lemelle, the following statements, directions and agreements are adopted as the Pre-Trial Order in this case.

**1.      Pre-Trial Conference Date**

The Pre-Trial Conference is scheduled telephonically for October 13, 2020 at 9:30 a.m.

2.      **Appearance of Trial Counsel for the Parties**

Jessica Vasquez, Esq.                  Thomas S. Keaty, Esq. (#7666)
Vasquez Law Office                     Keaty Law Firm LLC
*Counsel for Plaintiff*                *Counsel for Defendants*
*And Counter-Defendants*               *And Counterclaimant*
400 Poydras Street, Ste. 900           365 Canal Street, Ste. 2410
New Orleans, LA 70130                  New Orleans, LA 70130
Tel: (504) 571-9582                    Tel: (504) 524-2100
Fax: (504) 684-1449                    Fax: (504) 524-2105

                                       Steven M. Hannan, Esq. (#33878)
                                       Hannan, Giusti & Hannan, LLP
                                       *Counsel for Defendants*
                                       *And Counterclaimant*
                                       2201 Ridgelake Drive
                                       Metairie, LA 70001
                                       Tel: (504) 831-5300 Ext. 127
                                       Fax: (504) 831-3110

3.      **Description of the Parties**

Plaintiff ETDO, Productions LLC ("ETDO") is a Louisiana limited liability company incorporated in 2015, and in good standing with the State, who contends that they own the trademark rights to the name DISCO AMIGOS and the disco bull logo. ETDO is owned by four members, two of which are Jerry Lenaz ("Lenaz") and Francois Camenzuli ("Camenzuli"), the Counter-Defendants in this action. Francois Camenzuli and Jerry Lenaz respectively created the name DISCO AMIGOS and logo, a mirrored disco ball with symmetrical bull horns and nose ring.  Lenaz and Camenzuli formally incorporated Disco Amigos Social Aid and Pleasure Club as a Louisiana 501(c)(7) non-profit corporation with Lenaz and Camenzuli serving as principal officers and board members.

Disco Amigos Social Aid and Pleasure Club (the "Non-Profit") is a Louisiana 501(c)(7) non-profit corporation organized and existing under the laws of the State of Louisiana and in good standing with the State.  The Non-Profit was formed on May 16, 2012.  Defendants Alfredo Cruz, Michele Rossi, Michele Hudak, Marisa Naquin, Sonya Bourgeois, and Lisette Bayle are all

2

residents of the age of majority residing in the Eastern District of Louisiana who are/were board members of the Non-Profit and Defendant Renee Pastor, a resident of this District, is/was a member of the Disco Amigos Social Aid and Pleasure Club.

**4.      Jurisdictional Basis of Each Claim**

The parties state the jurisdictional basis of each of its claims as follows:

- This is a lawsuit based upon Federal Question claims asserted under the Lanham Act, 15 U.S.C. § 1121 and under 28 USC §§ 1331 and 1338.

- Supplemental subject matter jurisdiction over the related state law claims is proper pursuant to 28 USC §§ 1338 and 1367.

**5.      Motions Pending or Contemplated**

The following motions are pending before the Court.

- Defendants and Counterclaimant's Motion in Limine to Preclude Certain Evidence and Testimony filed on September 21, 2020.  (DOC. 78)

- Defendant Renee Pastor contemplates a motion for dismissal for failure to state a claim on the basis that a name reservation with the Secretary of State does not automatically confer substantive rights, and therefore no damage was caused; and alternatively, under the *Noerr-Pennington* Immunity Doctrine.

**6.      Summary of Material Facts Claimed by the Parties**

**Plaintiff**

"Disco Amigos" is a phrase coined by Francois Camenzuli on November 16, 2011 during a trip to the Macy's Parade in New York City and the logo of a disco ball with horns and nose ring was created by Jerry Lenaz on February 15, 2012. Both Lenaz and Camenzuli were instrumental in forming the nonprofit, Disco Amigos Social Aid and Pleasure Club, and established an Executive Committee which controlled the quality and direction of the Nonprofit.

3

The Nonprofit was granted a non-exclusive implied license to use the trademark and logo upon its creation. In 2015, Lenaz and Camenzuli assigned their trademark rights to ETDO Productions, LLC, the rightful owner of the trade name and logo *Disco Amigos,* upon formally organizing as an LLC. ETDO members remained on the Executive Committee and provided services to the Nonprofit such as use of the "El Toro De Oro" van which represented the Disco Amigos "bull" logo. ETDO continued to use the trademark and logo and provided services to other third parties as part of its business.

At the same time, the Nonprofit also used the logo and trademark non-exclusively. ETDO was in the process of expanding and/or franchising the Disco Amigos brand by forming different groups in different states including a Birmingham group which started to form around 2016. ETDO presented the Nonprofit with a formalized agreement to use the name and logo in 2019. An operational and management dispute began forming in the group and the individual defendants felt that Lenaz and Camenzuli were engaged in wrongful activity - when in fact they were not - at the time when ETDO was requesting a licensing agreement. Individual defendants began forming a dissonant faction within the group to usurp leadership, remove Nonprofit board positions, and claim ownership of the trade name and logo.

Led by Alfredo Cruz, this group began undermining operations by asserting they were in fact the leaders of the Nonprofit and demanded Lenaz and Camenzuli step down as Executive Committee members - which they did not. Individual Defendants countersued alleging that Lenaz and Camenzuli profited from the Nonprofit, misappropriated intellectual property, and acted improperly as board members of the Nonprofit by not exercising a duty of reasonable care and fiduciary responsibility and not acting in the best interest of the Nonprofit. Lenaz and Camenzuli did act in the best interest of the Nonprofit, are the proper Executive Board

leadership, and ETDO seeks a stop to the wrongful use of the trademark and logo by the Defendants along with damages, attorneys fees and costs associated with this matter.

### **Defendants and Counterclaimant**

Disco Amigos Social Aid and Pleasure Club, the Non-Profit, is a Louisiana 501(c)(7) non-profit corporation formally incorporated on May 16, 2012 by Lenaz, Camenzuli, and John Tiblier ("Tiblier") for the purpose of preserving the dance, culture, history, music and atmosphere of disco through arranging and conducting disco themed parties, parades and performances. From the time of its formation, the Non-Profit continuously used its DISCO AMIGOS name and logo in commerce, without abandonment or interruption, in all of its dealings, including contracts with parade groups and event organizers, as well as the general public. Throughout its eight-year history and its many and varied public appearances, the Non-Profit never questioned its ownership of its DISCO AMIGOS name and logo and never suspected that Lenaz, Camenzuli or ETDO might try to misappropriate the name and logo for personal gain.

The Non-Profit held their first weekly dance class on or about April 19, 2012 with seventeen people in attendance and orders for tee shirts bearing the DISCO AMIGOS name and logo were taken. Members began paying dues to the Non-Profit as of June 4, 2012. The Non-Profit performed regularly at parades and events, starting with the Festigals Stilleto Stroll (a 501(c) non-profit) on June 23, 2012 and the Running of the Bulls on July 13, 2012 (raising money for various charities). The Non-Profit contracted with the Krewe of Carrollton to perform in its first Mardi Gras parade on January 27, 2013; it advertised and sold tickets to non-members to dance with the Non-Profit in a "Disco Train" and this became an annual occurrence in all of the Non-Profit's Mardi Gras appearances.

The Non-Profit has continued to grow since its inception and has always held itself out to the public, and still does, as DISCO AMIGOS, displaying the DISCO AMIGOS name and logo at all performances, events, dance classes, and anytime members gathered.  The members and board promoted and continue to promote the Non-Profit and continue to hold weekly dance classes and manage numerous performances and appearances at parades and events for various charitable and for-profit organizations.  The Non-Profit always has and continues to create its own choreography and holds weekly dance classes.  The members have formed committees and have designed and continued to design and update uniforms, create uniform accoutrements, create marketing plans, solicit sponsorship, and increase social media presence, among many other enterprises.  As a result of the Non-Profit's extensive use and promotion of the DISCO AMIGOS name and logo in commerce, the marks have built up valuable goodwill. The Non-Profit continues to manage and protect its image and relationships with its clients, potential members, and the general public.

In June 2013, the Non-Profit held its first official board meeting for the 2013-2014 season where budgetary, uniform, marketing, events, and membership discussions took place. Even though current ETDO owners Tiblier, Lenaz, and Camenzuli held executive positions on the board, no discussions were held at all at that board meeting or any other informing the board that Lenaz and Camenzuli believed they owned the instant trademarks or that they had granted a license, implied or otherwise, to the organization and its members.

At a board meeting held only via e-mail on February 12, 2014, Lenaz made a proposal to the Non-Profit board that the Non-Profit rent sound equipment from Tiblier, Lenaz, and Camenzuli for use at Mardi Gras, future events, and practices for a sum certain.  Lenaz presented to the board some competing rates for equipment rental and asked the board to push through a vote via e-mail before the end of the same day.  Presented with this urgency, the board affirmed

the proposal.  Lenaz did not present any information regarding ownership or licensing of the intellectual property at that board meeting or any other.

On January 15, 2015, ETDO Productions, LLC was registered by Lenaz, Camenzuli, and Tiblier as a for-profit corporation with the stated generic purpose of engaging in any lawful activity for which limited liability companies may be formed.  At the Non-Profit board meeting held on August 26, 2016, Camenzuli presented the board with a proposal for a one-year Production Services Agreement with ETDO effective June 1, 2016 and urged that the agreement be approved at that meeting.  The agreement provided for rental of sound, lighting and effects equipment, support equipment and vehicles, and professional services and labor at a rate of $800 per month, which the board accepted based on Camenzuli's representations that ETDO's prices were competitive.  The contract did not state that Lenaz, Camenzuli, or ETDO believed they owned the name DISCO AMIGOS and logo, or that Lenaz and Camenzuli had granted an implied license of the name and logo to the Non-Profit, or that they had revoked the implied license and assigned it to ETDO in January 2015.  The agreement did not purport to be a licensing agreement.  Neither Lenaz, Camenzuli, nor the Non-Profit board member and ETDO owner Bruce Lin disclosed to the board on August 26, 2016 or at any time thereafter that Lenaz, Camenzuli, or ETDO claimed ownership of the DISCO AMIGOS name and logo.  In fact, it was never disclosed to the Non-Profit and Defendant board members until documents were produced in discovery, that: ETDO was surreptitiously double billing clients and the Non-Profit for the same equipment rental at the same events, and representing to clients that it "handled" the Non-Profit, and as such it would throw in a performance by the Non-Profit for no charge, along with its equipment rental services.

On February 3, 2017, the Non-Profit entered into a License Agreement with Nerds Nola and Jeny Himel to create an embroidery design using the DISCO AMIGOS logo.  Lenaz signed

7

the Agreement on behalf of licensor, the Non-Profit, on January 30, 2017.  The Agreement stated that "DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB ('DA') owns Disco Amigos Logo (the 'Authored Work.')  DA grants Licensee a non-exclusive license to use the property for embroidery purposes."  The License Agreement did not say that Lenaz, Camenzuli, or ETDO owned the DISCO AMIGOS logo.

A mirror image of the 2016 Production Services Agreement was approved by the Non-Profit board effective June 1, 2017, except the Non-Profit was to now pay $1,000 per month to ETDO.  The agreement again contained no language about ownership of the DISCO AMIGOS name and logo, implied licenses, or assignments.  Although in 2018 the Non-Profit board expressed its dissatisfaction with the equipment and services provided by ETDO and requested that a new agreement be entered, Lenaz and Camenzuli failed to provide the proposed production services agreement at that time or at any time thereafter.  In September 2018, the board agreed to proceed month to month regarding the production services agreement.  Lenaz continued to deduct $1,000 per month from the Non-Profit bank account in payment of the expired contract. At the board meeting of January 23, 2019, Camenzuli and Lenaz again deferred discussion of the renewal of the ETDO production services agreement and advised that ETDO had purchased a truck.  It was learned that Lenaz had transferred the Non-Profit monies to ETDO in December 2019 as "pre-payment" to purchase and register the truck even though there was no contract in place providing for any advance payments to ETDO by the Non-Profit.

Some Non-Profit members with dual residency in New Orleans and Birmingham introduced their Birmingham friends to the social aid and pleasure club.  These Birmingham residents joined the organization and the Birmingham contingent became known as DISCO AMIGOS Birmingham.  The board struggled with the logistics of how these members could be

absorbed into the club while still complying with IRS requirements concerning limitation of membership.

In early 2019, issues involving ongoing neglect, breach of fiduciary duties, and conflict of interests by Lenaz and Camenzuli, as well as what to do about the Birmingham contingent, all came to a head.  On March 25, 2019, the executive committee illegally attempted to dissolve the Non-Profit board of directors.  The board rejected this illegitimate action and agreed to jointly meet with legal counsel to discuss scenarios for restructuring that would allow the social aid and pleasure club to expand to Birmingham.  Lenaz instead secretly sought legal counsel for ETDO.

Lenaz and Camenzuli's terms expired in May 2019, but all existing terms were extended by agreement of the board and executive committee until September 1, 2019 to allow discussions to occur about restructuring the organization to accommodate the Birmingham based members. Elections were held on July 25, 2019 and Rossi, Naquin, and Hudak were elected to fill the executive committee positions of Camenzuli, Lenaz, and Janowski.  Lenaz and Camenzuli asserted that they would refuse to step down from their executive committee positions at the end of their terms on September 1, 2019.

On August 21, 2019, Lenaz and Camenzuli in their dual roles as executive committee members of the Non-Profit and owners of ETDO, along with their attorney, presented the board with a proposed licensing agreement in which ETDO claimed to own DISCO AMIGOS' name and logo and that the Non-Profit would have to pay fees to ETDO for the right to use its, the Non-Profit's, own name, logo, and other intellectual property.  The board rightly refused to sign the licensing agreement.  Thereafter, Lenaz and Camenzuli again threatened to dissolve the Non-Profit board and also the entire 501(c)(7) organization if the Non-Profit did not sign the licensing agreement.  ETDO also filed applications for registration of the DISCO AMIGOS marks with the United States Patent and Trademark Office on August 23, 2019, making false claims

regarding ownership of the instant marks.[1]  The Non-Profit has filed a consolidated opposition to the applications and the opposition proceedings are stayed pending this Court's decision regarding ownership of the trademarks.

On September 20, 2019, Janowski, Lenaz, and Camenzuli filed a petition for temporary restraining order and a permanent injunction and for involuntary dissolution in the Civil District Court for the Parish of Orleans.  In the State Court petition, Lenaz and Camenzuli alleged that they, individually, are the owners of the Non-Profit's intellectual property and did not represent to the Court or defendants that Lenaz and Camenzuli had assigned their alleged ownership interest in the DISCO AMIGOS name and logo to ETDO in January 2015 – nor was ETDO made a party to the State Court action.  Despite representations to the Court in the state action, ETDO (not Lenaz or Camenzuli) filed the instant the instant Complaint in the U.S. District Court for the Eastern District of Louisiana on October 18, 2019 alleging that it is the owner of the name DISCO AMIGOS and the logo.

7.    **Single Listing of Uncontested Material Facts**

The parties jointly provide the following single listing of uncontested material facts for purposes of trial.

1.    On March 28, 2012, Jerry Lenaz posted content on the Google Sites website www.discoamigos.com soliciting dancers and performers to attend the Disco Amigos' first practice on April 12, 2012 at the Rendon Inn. Mr. Lenaz solicited membership fees in exchange for the participation of the dancers.

---

[1] Application Serial Nos. 88/591,114 and 88/591,141, both filed on August 23, 2019.

2.       On May 5, 2012, Disco Amigo members Jerry Lenaz, Francois Camenzuli, and John Tiblier held a disco themed pop-up event called "Cinco de Disco" with a Disco Amigo member from Virginia.

3.       Mr. Lenaz and Mr. Camenzuli formed the Louisiana 501(c)(7) non-profit organization Disco Amigos Social Aid and Pleasure Club on May 16, 2012.

4.       Disco Amigos Social Aid and Pleasure Club operated as a 501(c)(7) non-profit, marched in parades, performed in other events, and held parties.

5.       ETDO entered into agreements with the Non-Profit regarding ETDO's production services which required monthly payments in exchange for the professional services including, equipment, vehicles, sound and lighting and labor.

6.       The Board of Directors of the Non-Profit is made up of 5 to 9 members, three of the board positions are required to be the Executive Committee.

7.       As a matter of operational efficiency, for each event undertaken by the Non-Profit, a budget was created, presented to the board, and approved by the board.

8.       In order to be on the Board of Directors of the Non-Profit, members must be in good standing by paying dues pursuant to Bylaw 7.2.3.

9.       A cease-and-desist was sent on September 11, 2019 to the individual Defendants.

10.      Mr. Lenaz and Mr. Camenzuli formed the 501(c)(7) nonprofit organization "Disco Amigos Social Aid and Pleasure Club" ("NONPROFIT") on May 16, 2012.

11.      The Non-Profit members and board, under the DISCO AMIGOS name and logo, continue to promote the Non-Profit, hold weekly dance classes, create their own choreography, and manage numerous performances and appearances at parades and events for various charitable and for-profit organizations.

12.     The Non-Profit members formed committees which have in the past and continue to: market services under DISCO AMIGOS name and logo, solicit sponsorship, and increase social media presence with the public, among other enterprises.

13.     On January 15, 2015, the limited liability company ETDO Productions, LLC was formally incorporated consisting of Jerry Lenaz, Francois Camenzuli, Bruce Lin, and John Tiblier who filed Articles of Organization with the Secretary of State, with the stated purpose of engaging in any lawful activity for which limited liability companies may be formed.

14.     At a board meeting held via e-mail on February 12, 2014, Lenaz made a proposal to the Non-Profit board that the Non-Profit rent sound equipment from Tiblier, Lenaz, and Camenzuli for use at Mardi Gras, future events, and practices for a sum certain.

15.     The 2016 Production Services Agreement was not and did not purport to be a licensing agreement.

16.     The 2016 Production Services Agreement did not allege that Lenaz, Camenzuli, or ETDO believed they owned the name DISCO AMIGOS and the marks.

17.     The 2016 Production Services Agreement did not allege that Lenaz and Camenzuli had granted an implied license of the DISCO AMIGOS marks to the Non-Profit.

18.     The 2016 Production Services Agreement did not allege that Lenaz and Caemenzuli had revoked the alleged implied license and assigned their alleged individual rights in the DISCO AMIGOS marks to ETDO in January 2015.

19.     Neither Lenaz, Camenzuli, nor the Non-Profit board member and ETDO owner Bruce Lin disclosed to the Non-Profit board on August 26, 2016 that Lenaz, Camenzuli, or ETDO claimed ownership of the DISCO AMIGOS name and logo.

20.     On February 3, 2017, the Non-Profit entered into a License Agreement with Nerds Nola and Jeny Himel to create an embroidery design using the DISCO AMIGOS logo.

21.     Lenaz signed the License Agreement with Nerds Nola on behalf of licensor, the Non-Profit, on January 30, 2017.

22.     The License Agreement with Nerds Nola stated that "DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB ('DA') owns Disco Amigos Logo (the 'Authored Work.') DA grants Licensee a non-exclusive license to use the property for embroidery purposes."

23.     The License Agreement with Nerds Nola did not say that Lenaz, Camenzuli or ETDO owned the DISCO AMIGOS logo.

24.     A mirror image of the 2016 ETDO equipment rental Production Services Agreement was approved by the Non-Profit board effective June 1, 2017, except the cost to the Non-Profit was increased to $1,000 per month.

25.     The 2017 Production Services Agreement of ETDO again contained no information about ETDO's alleged ownership of DISCO AMIGOS name and logo, implied licenses, or assignments.

26.     Bylaws 7.4.1.4 empowers the Non-Profit board of directors to approve decisions to borrow money, incur debt, grant a security interest; alienate, lease, or encumber all or substantially all of the assets of the organization.

27.     The proposed licensing agreement provided that ETDO allegedly owned DISCO AMIGOS' name and marks and that the Non-Profit would be required to pay fees to ETDO for the right to use its, the Non-Profit's, own name, logo and other intellectual property.

28.     The Non-Profit filed a consolidated opposition to ETDO's federal service mark applications and the opposition proceedings are stayed pending the outcome of this Court's decision regarding ownership of the intellectual property.

29.     On September 20, 2019, Janowski, Lenaz, and Camenzuli filed a petition for temporary restraining order and a permanent injunction and for involuntary dissolution of the Non-Profit in the Civil District Court for the Parish of Orleans.

**8.     <u>Single Listing of Contested Material Issues of Fact</u>**

The parties jointly provide the following single listing of contested material issues of facts for purposes of trial.

1.     The phrase "Disco Amigos" was coined by Francois Camenzuli on November 16, 2011 during a trip to the Macy's Parade in New York City.[2]

2.     The logo of a disco ball with horns and nose ring was created by Jerry Lenaz on February 15, 2012.[3]

3.     On November 21, 2011, Mr. Lenaz posted a video of a van called the "El Toro De Oro" Tour on the Disco Amigos Facebook page.[4]

4.     On November 26, 2011, Mr. Lenaz posted a picture of a van with bull horns and a bull ring on the Disco Amigos Facebook which was the inspiration for the Disco Amigos logo.[5]

5.     Mr. Lenaz created the Disco Amigos logo which appears here on or about February 15, 2012.[6]

---

[2] This allegation is contested by Defendants.
[3] This allegation is contested by Defendants.
[4] Defendants' Objection on the basis of relevance.
[5] This allegation is contested by Defendants.
[6] This allegation is contested by Defendants.



6.      Mr. Lenaz purchased the domain www.discoamigos.com on November 16, 2011.[7]

7.      Mr. Lenaz opened a twitter account on November 16, 2011 under the name "Disco Amigos" and started using the hashtag #ETDOvan meaning, El Toro de Oro.[8]

8.      The Facebook page "Disco Amigos" was created on November 16, 2011.[9]

9.      The social media pages were used to solicit performers and book events.[10]

10.     On February 10, 2012, Andrea Heming was the treasurer of Noisician Coalition and hired Disco Amigos to support her group in the Krewe of Muses on February 16, 2012 in exchange for $250.00.[11]

11.     On February 16, 2012, the Disco Amigos led by Jerry Lenaz drove the El Toro de Oro during the parade and performed in the parade.[12]

12.     On February 16, 2012, a video was posted showing the use of the Disco Amigos logo, name, and flag during the Krewe of Muses Parade.[13]

---

[7] Defendants' Objection: relevance.  This allegation is contested by Defendants.
[8] Defendants' Objection: relevance.
[9] Defendants' Objection: relevance.
[10] This allegation is contested by Defendants.
[11] Defendants' Objection: hearsay.
[12] This allegation is contested by Defendants.

13.     The van had the horns and the Disco Amigos logo attached.  Mr. Lenaz made the flag from an iron-on t-shirt and the pattern of the logo he created.[14]

14.     That same day at 7:19 p.m. a tweet on Twitter from the Disco Amigos page stated that Disco Amigos' El Toro De Oro van was rolling with the Noisician Coalition with Jerry Lenaz at the helm in the Krewe of Muses.[15]

15.     On March 26, 2012, Mr. Lenaz posted the first Facebook cover page for Disco Amigos, a photo of an instructional record for disco dancing.[16]

16.     On April 12, 2012 the first practice was held for the "Disco Amigos" at the Rendon Inn and payment of membership fees were solicited.[17]

17.     On May 2, 2012, T-shirts with the logo and name DISCO AMIGOS were purchased for $182.88 by Francois Camenzuli.[18]

18.     On May 3, 2012, a tweet from the Disco Amigos twitter page was posted to "check out Disco Amigos at the corner of Mystery St and Maurepas behind Santa Fe. Come see the van! #eltorodeoro" in order to solicit interested performers and/or book gigs.[19]

19.     On January 15, 2015, ETDO was formed consisting of Jerry Lenaz, Francois Camenzuli, Bruce Lin, and John Tiblier to formalize the unincorporated joint partnership and filed Articles of Organization with the Secretary of State.[20]

---

[13] This allegation is contested by Defendants.
[14] This allegation is contested by Defendants.
[15] Defendants' Objection:  relevance.
[16] Defendants' Objection: hearsay.
[17] This allegation is contested by Defendants.
[18] Defendants' Objection: relevance.
[19] Defendants' Objection: relevance.
[20] This allegation is contested by Defendants.

20.     Although the term for members on the Non-Profit Executive Committee was three years, each committee member could be reappointed or re-elected pursuant to Bylaw 8.3.1.[21]

21.     Francois Camenzuli was reappointed as interim Executive Committee member of the Non-Profit in 2018 and remains in that position for three years unless reappointed or re-elected.[22]

22.     The Non-Profit's Bylaws contain no requirements for any of the officers of the Executive Committee to present a budget to the board.[23]

23.     There is no requirement in the Non-Profit's Bylaws for a budget.[24]

24.     The Non-Profit board of directors has the power to handle fiscal matters pursuant to bylaw 7.4.1.4.[25]

25.     The Non-Profit board of directors consists of more individuals than Jerry Lenaz and Francois Camenzuli – all of whom had the power to present a budget or handle fiscal matters pursuant to bylaw 7.4.1.4.[26]

26.     ETDO required a written licensing agreement for the DISCO AMIGOS name and logo and revoked the implied license given in 2012.[27]

27.     While three members of the Non-Profit's board, who also comprise the Executive Committee of the Board, agreed that a license agreement with ETDO regarding the Non-

---

[21] Defendants' Objection: Bylaw 8.3.1 does not address reappointment or re-election.
[22] This allegation is contested by Defendants.
[23] Defendants' Objection: best evidence.  The board of directors meeting minutes show that Lenaz was the lead on the Budget, and in practice, Lenaz was in charge of the budget.
[24] Defendants' Objection: best evidence.  Given that the IRS requires social clubs to file annual returns of their income and expenses, to claim that a budget is not required for a 501(c)(7) is nonsense.
[25] Defendants' Objection: best evidence.
[26] Defendants' Objection: best evidence.  This allegation is contested by Defendants.
[27] This allegation is contested by Defendants.

Profit's use of the trademark was proper, the other five members disagreed and insisted that such an agreement was unnecessary.[28]

28.     The Executive Committee moved to dissolve the Non-Profit which is still pending in Civil District Court pursuant to Bylaw 8.5.1.[29]

29.     Bylaw 7.4.1.2 requires that Non-Profit board meetings be called by the Executive Committee.[30]

30.     Dues are to be paid annually pursuant to Bylaw 9.3 of the Non-Profit, between Mardi Gras and the start of the fiscal year, June.[31]

31.     Defendants began using the name "Disco Amigos" to solicit dues from performers, advertised under Disco Amigos NOLA on the web and social media, entered contracts with Mardi Gras Krewes, held their own events, and solicited dues paying members.[32]

32.     Mr. Lenaz and Mr. Camenzuli granted the Non-Profit implied licenses without consideration which allowed it to use their respective trademarks and intellectual properties: namely the trademark phrase "Disco Amigos" coined by Mr. Camenzuli and the logo designed by Mr. Lenaz.

33.     ETDO received an assignment from Jerry Lenaz and Francois Camenzuli of the intellectual property rights for the phrase "Disco Amigos" and the Disco Amigos logo in 2015.

---

[28] This allegation is contested by Defendants.
[29] Defendants' Objection: best evidence.  This allegation is contested by Defendants.
[30] Defendants' Objection: best evidence.  This allegation is contested by Defendants.
[31] Defendants: Although this is generally true, an exception was made for the 2018-2019 season.
[32] This allegation is contested by Defendants.

34.     ETDO entered into agreements to provide services including equipment, music, talent, Disco Amigo performers, production, sound, disco balls, and lighting with various customers such as the American Diabetes Association, Kira Hess, Girls on the Run, Crescent Crown Distributing and JC Ellis Elementary.

35.     ETDO also provided services to the Non-Profit including the van, equipment, music, talent, Disco production, sound, disco balls, and lighting at discounted and under market rates.

36.     Discounts were given to the Non-Profit for committing to a year agreement. The agreement would continue until the agreement is terminated or until a new agreement is put in place. The contract did not specify what happens if one condition happens before the other and did not specifically state that the agreement terminates at the end of the year.

37.     ETDO continued to provide services to the Non-Profit beyond the one-year term period and received monthly payments from the Nonprofit until 2019.

38.     ETDO was paid in December 2018 for past due services rendered to the Non-Profit between June through December 2018.

39.     Kim Janowski and the Executive Committee authorized payments to ETDO on the past due amounts based on the Executive Committee's decision to pay past debts.

40.     Kim Janowski and the Executive Committee authorized pre-payments to ETDO for future services and equipment that were upcoming shortly and ultimately used by the Non-Profit.

41.     The services provided by ETDO were under market rates and the contract could have been cancelled at any time with 45 days notice to ETDO.

42.     Both Mr. Lenaz and Mr. Camenzuli served on the Executive Committee of the Board of Directors for the Non-Profit throughout the existence of the Non-Profit.

43.     Gerald "Jerry" Lenaz was re-elected in 2016 for three years and remains a member of the Executive Committee until another qualified board member is nominated and voted to fill the position.

44.     The Executive Committee was responsible for the day to day responsibilities that were not assigned to the Board of Directors and had the power to take any action by ⅔ vote.

45.     In 2019, the board of the Non-Profit came to a deadlock over the licensing agreement with ETDO.

46.     The Non-Profit board could not and has not resolved the deadlock to this date.

47.     To date, no Non-Profit board meeting has been called by the Executive Committee as it existed on January 23, 2019.

48.     No dues were paid by any Non-Profit board member except for Jerry Lenaz, Kim Janowski, and Francois Camenzuli for 2019.

49.     The remaining Non-Profit board of directors did not pay dues by the required date.

50.     The five remaining Non-Profit board members began using the DISCO AMIGOS name and logo without permission from ETDO on or about September 2019.

51.     Non-Profit members left the group due to confusion.

52.     ETDO was unable to perform in Krewe of Carrollton due to the trademark and leadership confusion between the groups.

53.     Lenaz's and Camenzuli's activities prior to the founding of DISCO AMIGOS in May 2012 were **in the nature of planning** the formation of DISCO AMIGOS Social Aid and Pleasure Club and not providing the services themselves.

54.     Lenaz and Camenzuli held themselves out to be members of the Disco Amigos Social Aid and Pleasure Club, acting on behalf of the organization.

55.     From 2012 to 2019, Lenaz and Camenzuli never indicated or notified the Non-Profit board of directors or the membership that they considered the name DISCO AMIGOS or the marks to be their own during the nearly eight year period prior to the events leading to the dispute at issue.

56.     ETDO has never taught dance classes, performed during Mardi Gras, or presented or organized events, nor is it recognized by the general public in association with these services.

57.     Since 2012 to present, the Non-Profit has continuously conducted dance classes, arranged and conducted performances, organized dancing events, created and exhibited costumes for cultural, educational, and entertainment purposes, and is recognized as a performance group by the general public as the exclusive source of the services provided under DISCO AMIGOS name and marks.

58.     The general public associates the DISCO AMIGOS name and logo with the Non-Profit, rather than with Lenaz, Camenzuli, or ETDO and looks to the Non-Profit to stand behind the quality of the services associated with the DISCO AMIGOS name and logo rather than to Lenaz, Camenzuli, or ETDO.

59.     Lenaz and Camenzuli never acquired ownership of the name DISCO AMIGOS and the marks.

60.     As Lenaz and Camenzuli did not own the DISCO AMIGOS name and marks, they could not grant an implied license to the Non-Profit nor could they assign rights to the DISCO AMIGOS name or the logo to ETDO in 2015.

61.     As registration by one who did not own the mark at the time of filing renders the underlying application void, the attempted registrations of the instant DISCO AMIGOS marks with the United States Patent and Trademark Office on August 23, 2019 by ETDO is void *ab initio.*

62.     ETDO entered into agreements with the Non-Profit in 2016 and 2017 to provide rental of sound, lighting and effects equipment, support equipment and vehicles, and professional services and labor.  The agreements did not purport to license intellectual property.

63.     ETDO fraudulently represented to clients such as the American Diabetes Association, Kira Hess, Girls on the Run, Crescent Crown Distributing and J.C. Ellis Elementary that it "handled" the Non-Profit, improperly charged fees for the Non-Profit's appearances without the Non-Profit's knowledge or approval, and wrongly asserted that the Non-Profit's services would be free if a client rented its equipment from ETDO.

64.     After the expiration of the 2017 Production Services Agreement, the board of directors and executive committee members of the Non-Profit reached an agreement in September 2018, that the board would proceed from month to month under the production services agreement and were no longer bound to the termination provisions of the agreement.  No prepayments to ETDO were authorized.

65.     Lenaz continued to deduct $1,000 per month from the Non-Profit bank account in payment of the month to month contract.  At the Non-Profit board meeting of January 23,

2019, Camenzuli and Lenaz deferred discussion of the renewal of the ETDO production services agreement and advised that ETDO had purchased a truck.

66.     Lenaz transferred Non-Profit monies to ETDO in December 2019 as "pre-payment" to purchase and register the truck even though there was no contract in place providing for any advance payments to ETDO by the Non-Profit.

67.     Lenaz, Janowski, and Camenzuli could not legitimately authorize pre-payments to ETDO for future services under the Non-Profit's month to month contract with ETDO.

68.     The services provided to the Non-Profit by ETDO were not provided at under market rates, especially given that its equipment was unreliable and, in some cases, broken down beyond repair.

69.     Even though Lenaz and Camenzuli served on the executive committee of the Non-Profit from 2012 until September 1, 2019, they never made any claim to the ownership of the marks until their terms were coming to an end and had ended.

70.     Lenaz's and Camenzuli's terms on the Non-Profit board of directors and as executive officers expired on August 31, 2019 and Janowski was removed from the board at the October 28, 2019 board meeting due to failure of her fiduciary duties to the organization, for not being a member in good standing, and for being a plaintiff in a lawsuit against the organization.  Notification of her removal and the procedure for appeal was e-mailed to Janowski on October 30, 2019.  She did not respond to the e-mail within the week allotted and so was formally removed from the Non-Profit board.

71.     Bylaws 8.5.1 of the Non-Profit provides that the executive committee may take action by a 2/3 vote, but Bylaws 8.5.1 does not empower it to take "any" action.

72.     Bylaws 8.4.1 of the Non-Profit grants the executive committee the powers and duties to perform any day-to-day operations not already granted to the board due to the pecuniary responsibility of 501(c)(7).

73.     In 2019, the executive committee attempted to dissolve the board of directors and the Non-Profit because the board of directors would not sign a licensing agreement providing that ETDO claimed to own DISCO AMIGOS' name and marks and that the Non-Profit would be required to pay fees to ETDO for the right to use its own name, logo and other intellectual property.

74.     There was never a deadlock of the Non-Profit board as claimed by ETDO.  The board at all times welcomed further discussions regarding a solution that was consistent with the bylaws, IRS 501c7, and served the best interest of the membership.

75.     Bylaws 7.4.1 of the Non-Profit provides that its board of directors shall meet at least once each calendar quarter as directed by the executive committee and when activities require.

76.     Non-Profit board meetings were held on April 1, May 13, June 10, July 25, and August 21, 2019.

77.     A general membership meeting of the Non-profit was held on May 20, 2019, at which Camenzuli announced to the membership that the 2018-2018 season would be extended from June 1, 2019 to September 1, 2019 and that the payment of dues ordinarily due on June 1 would be extended accordingly.

78.     Kim Janowski and Francois Camenzuli had not paid their membership dues to the Non-Profit as of June 1, 2019.

79.     The board of directors and membership of the Non-Profit continued to use the DISCO AMIGOS name and logo, which is owned by the Non-Profit, as it always had in the past.

80.     Some members left the Non-Profit as a result of the dispute between the executive board/ETDO and the Non-Profit board of directors, but as of February 4, 2020, just prior to Mardi Gras, the Non-Profit had 76 members of which 59 (78%) were returning members and 17 (22%) were new members.

81.     The Non-Profit was able to perform in four parades during Mardi Gras 2020, due to its reputation for quality performances in the past.

82.     ETDO was unable to perform in Krewe of Carrollton because it failed to retain or recruit sufficient members to conduct performances, did not have a choreography team to create dances or teach lessons and could not develop a sufficient framework to carry out Mardi Gras performances.

83.     Although Lenaz and Camenzuli may have had the subjective belief that they owned the mark and would control the Non-Profit after it was formed, conduct from 2012 to 2019 contradict that notion.[33]

84.     Even if Lenaz posted a video of a van called the "El Toro De Oro" Tour on the Disco Amigos Facebook page on November 21, 2011, this action does not constitute "use in commerce."[34]

85.     Even if Lenaz posted a picture of a van with bull horns and a bull ring on the Disco Amigos Facebook on November 26, 2011, which inspired the Disco Amigos logo, this activity not "use in commerce."[35]

---

[33] Contested by Plaintiff and Counter-Defendants.
[34] Contested by Plaintiff and Counter-Defendants.

86.     Even if Lenaz created the Disco Amigos logo which appears here on or about February 15, 2012, creation of the logo alone does not constitute "use in commerce."[36]



87.     Even if  Lenaz purchased the domain www.discoamigos.com on November 16, 2011, this activity is not "use in commerce."[37]

88.     Even if Lenaz opened a twitter account on November 16, 2011 under the name "Disco Amigos" and started using the hashtag #ETDOvan meaning, El Toro de Oro, or created a "Disco Amigos" Facebook page November 16, 2011, these actions are not "use in commerce."[38]

89.     Even if on February 10, 2012, Andrea Heming hired "the Disco Amigos" to support her group in the Krewe of Muses on February 16, 2012 in exchange for $250.00, such activity was carried out in the name of and by "the Disco Amigos," the Non-Profit,

---

[35] Contested by Plaintiff and Counter-Defendants.

[36] *Lyons v American College of Veterinary Sports*, 859 F.3d 1023 (Fed. Cir. 2017).  *Contested by Plaintiff and Counter-Defendants.*

[37] Trademark Act Section 45 defines "use in commerce" as follows: The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark.  TMEP §901.01.  A trademark/service mark identifies goods or services as being from a particular source.  Use of a domain name only as part of a web address does not qualify as source-indicating trademark use.  Registration of a domain name with a domain name registrar does not give the domain registrant any trademark rights.  *Contested by Plaintiff and Counter-Defendants.*

[38] TMEP § 901.01.  *Contested by Plaintiff and Counter-Defendants.*

and not Lenaz or Camenzuli individually, and inured to the benefit of the Non-Profit and was therefore "use in commerce" by the Non-Profit.[39]

90.     Even if Lenaz led "the Disco Amigos" in the El Toro de Oro during the parade on February 16, 2012, any "use in commerce" was by "the Disco Amigos," the Non-Profit; it did not establish ownership of intellectual property by Lenaz or Camenzuli.[40]

91.     The posting of a Facebook cover page for "Disco Amigos" showing a photo of an instructional record for disco dancing is not use in commerce.[41]

92.     On March 28, 2012 Lenaz posted content on the Google Sites website www.discoamigos.com soliciting dancers and performers to attend the first practice of "the Disco Amigos," the Non-Profit, on April 12, 2012 at the Rendon Inn. Mr. Lenaz' solicitation of membership fees in exchange for the participation of the dancers was conducted in the name of "Disco Amigos," not Lenaz individually, thus not granting any ownership rights in the marks to Lenaz individual.[42]

93.     From 2012 to 2019, Lenaz and Camenzuli held themselves out to be members of the Disco Amigos Social Aid and Pleasure Club, the Non-Profit, acting on behalf of the organization.[43]

94.     The Non-Profit has been the exclusive provider of services under the DISCO AMIGOS marks from 2012 to present.[44]

95.     On April 19, 2012 the first Disco Amigos dance practice was held at the Rendon Inn and payment of membership fees was solicited.[45]

---

[39] Contested by Plaintiff and Counter-Defendants.
[40] Contested by Plaintiff and Counter-Defendants.
[41] Contested by Plaintiff and Counter-Defendants.
[42] Contested by Plaintiff and Counter-Defendants.
[43] Contested by Plaintiff and Counter-Defendants.
[44] Contested by Plaintiff and Counter-Defendants.

96.     The first practice of "the Disco Amigos," the Non-Profit, was attended by seventeen persons and orders for tee shirts bearing the DISCO AMIGOS name and logo were taken.[46]

97.     Members began paying dues to the Non-Profit as of June 4, 2012 and weekly practices were held.[47]

98.     No contracts for performances or events by the Non-Profit were entered into or executed until after the incorporation of Disco Amigos Social Aid and Pleasure Club on May 16, 2012. [48]

99.     The Non-Profit's first appearances were in the Festigals Stilleto Stroll and Sprint (a 501(c) non-profit) on June 23, 2012 and the Running of the Bulls on July 13, 2012 (raising money for various charities).[49]

100.    The Non-Profit contracted with the Krewe of Carrollton and performed in its first Mardi Gras parade on January 27, 2013; it advertised and sold tickets to non-members to dance with the DISCO AMIGOS in a Disco Train and this became an annual occurrence in all of its Mardi Gras appearances.[50]

101.    In June 2013, the Non-Profit held its first official board meeting for the 2013-2014 season where budgetary, uniform, marketing, events, and membership discussions took place and Camenzuli as treasurer, presented a budget.[51]

---

[45] Contested by Plaintiff and Counter-Defendants.
[46] Contested by Plaintiff and Counter-Defendants.
[47] Contested by Plaintiff and Counter-Defendants.
[48] Contested by Plaintiff and Counter-Defendants.
[49] Contested by Plaintiff and Counter-Defendants.
[50] Contested by Plaintiff and Counter-Defendants.
[51] Contested by Plaintiff and Counter-Defendants.

102.    Even though current ETDO owners Tiblier, Lenaz, Camenzuli held executive positions on the Non-Profit board in 2013, no discussions were held at all at the June 2013 board meeting or any other board meeting informing the board that Lenaz and Camenzuli believed they owned the trademarks or that they had granted a license, implied or otherwise, to the organization and its members.[52]

103.    The terms of the Executive Committee are set forth in 8.3.1 of the Bylaws of the Non-Profit.[53]

104.    Pursuant to Bylaw 8.2.1 of the Non-Profit, members of the Executive Committee are eligible for re-election.  However, there is no provision for automatic "renewal." [54]

105.    Francois Camenzuli reappointment for one year as interim Executive Committee member was approved by a 2/3 vote of the Non-Profit board in April 2018 and Camenzuli was eligible to remain in that position for one year or until such time as another board member or former board member was nominated and elected.[55]

106.    The Non-Profit has continued to grow since its inception and has always held itself out to the public and still does, as the DISCO AMIGOS SOCIAL AID AND PLEASURE CLUB, displaying the DISCO AMIGOS name and logo at all performances, events, dance classes and anytime members gathered.  The Non-Profit maintains a publicly-available website containing information about past and future DISCO AMIGOS performances and how to book appearances or join the organization.[56]

---

[52] Contested by Plaintiff and Counter-Defendants.
[53] Contested by Plaintiff and Counter-Defendants.
[54] Contested by Plaintiff and Counter-Defendants.
[55] Contested by Plaintiff and Counter-Defendants.
[56] Contested by Plaintiff and Counter-Defendants.

107.   As a result of the Non-Profit's extensive use and promotion of the DISCO AMIGOS name and logo in commerce, the marks have built up valuable goodwill.[57]

108.   The Non-Profit continues to manage and protect its image and relationships with its clients, potential members, and the general public.[58]

109.   On February 12, 2014, Lenaz presented to the Non-Profit board some competing rates for equipment rental and asked the board to push through a vote via email before the end of the same day. Presented with this urgency, the Non-Profit board affirmed the proposal.  Lenaz did not present any information regarding ownership or licensing of the name and logo at that board meeting or any other.[59]

110.   At the Non-Profit board meeting held on August 26, 2016, Camenzuli presented the board with a proposal for a one-year Production Services Agreement with ETDO effective June 1, 2016 and urged that the agreement be approved at that meeting.  The agreement provided for rental of sound, lighting and effects equipment, support equipment and vehicles, and professional services and labor at a rate of $800 per month. The board accepted ETDO's proposal based on Camenzuli's representations that ETDO's prices were competitive.[60]

111.   Neither Lenaz, Camenzuli, or ETDO ever disclosed to the Non-Profit, Defendant board members, or DISCO AMIGOS clients – until documents were produced in discovery in this litigation – that ETDO was billing both clients and the Non-Profit for the same equipment rental at the same events.[61]

---

[57] Contested by Plaintiff and Counter-Defendants.
[58] Contested by Plaintiff and Counter-Defendants.
[59] Contested by Plaintiff and Counter-Defendants.
[60] Contested by Plaintiff and Counter-Defendants.
[61] Contested by Plaintiff and Counter-Defendants.

112.    Neither Lenaz, Camenzuli, or ETDO ever disclosed to the Non-Profit and Defendant board members – until documents were produced in discovery in this litigation – that ETDO was representing to clients that it "handled" the Non-Profit or that billing of the clients included charges for the Non-Profit's appearances. [62]

113.    It was never disclosed to the Non-Profit and Defendant board members – until documents were produced in discovery in this litigation – that ETDO was at times allegedly representing to clients that it would throw in a performance by the Non-Profit for no extra charge, along with ETDO's equipment rental services. [63]

114.    ETDO has never offered or conducted dance classes, made appearances or performances for cultural, educational and entertainment purposes, or offered any services listed in the applications for registration filed by ETDO with the U.S. Trademark Office.[64]

115.    Although in 2018 the Non-Profit board expressed its dissatisfaction with the equipment and services provided by ETDO and requested that a new agreement be entered, Lenaz, and Camenzuli failed to provide the proposed production services agreement at that time or at any time thereafter.[65]

116.    In September 2018, the Non-Profit board agreed to proceed month to month regarding engagement of ETDO for production services and payments under the production services agreement.[66]

---

[62] Contested by Plaintiff and Counter-Defendants.
[63] Contested by Plaintiff and Counter-Defendants.
[64] Contested by Plaintiff and Counter-Defendants.
[65] Contested by Plaintiff and Counter-Defendants.
[66] Contested by Plaintiff and Counter-Defendants.

117.    After September 2018, the Non-Profit treasurer Lenaz continued to deduct $1,000 per month from the Non-Profit bank account in payment of the month-to-month agreement.[67]

118.    At the Non-Profit board meeting of January 23, 2019, Camenzuli and Lenaz advised that ETDO had purchased a truck.[68]

119.    The board members learned that Lenaz had transferred Non-Profit monies to ETDO in December 2019 as "pre-payment" to purchase and register the truck even though there was no contract in place providing for any advance payments to ETDO by the Non-Profit.[69]

120.    Lenaz and Camenzuli always assured the Non-Profit board that they would abstain from any vote having to do with ETDO and that this alone would resolve any conflicts of interest.

121.    The executive committee, i.e. Lenaz, Camenzuli, and Kim Janowski, claimed that they approved the "prepayment" to ETDO for purchase of a truck even though two of the three committee members were not eligible to vote due to the conflict of interests.[70]

122.    Jerry Lenaz was signatory to the Non-Profit's bank account and lead on budget and presenting a revised budget during the 2018-2019 board of directors term.[71]

123.    At the August and September Non-Profit board meetings, although presentation of the budget by Lenaz was on the agenda, the minutes of the board meetings show that Lenaz was not ready to present a budget to the board.[72]

---

[67] Contested by Plaintiff and Counter-Defendants.
[68] Contested by Plaintiff and Counter-Defendants.
[69] Contested by Plaintiff and Counter-Defendants.
[70] Contested by Plaintiff and Counter-Defendants.
[71] Contested by Plaintiff and Counter-Defendants.

124.    The Non-Profit budget was not included on the agenda of the October 2018 board meeting and was tabled (parked in the "parking lot") pending future Executive Committee action.[73]

125.    No budget was ever subsequently presented to the Non-Profit board by Lenaz.[74]

126.    As a matter of operational efficiency, for each event undertaken by the Non-Profit, committee chairmen create and present a budget to the board for approval, these limited budgets in no way substitute for an organization's overall operating budget.[75]

127.    Some Non-Profit members with dual residency in New Orleans and Birmingham introduced their Birmingham friends to the Non-Profit.[76]

128.    These Birmingham residents joined the Non-Profit organization and the Birmingham-based members became known as DISCO AMIGOS Birmingham.[77]

129.    The Non-Profit board struggled with the logistics of how these Birmingham-based members could be absorbed into the club while still complying with IRS requirements concerning limitation of membership.[78]

130.    In early 2019, issues involving ongoing neglect, breach of fiduciary duties, and conflict of interests by Lenaz and Camenzuli, as well as what to do about the Birmingham-based members, came to a head.[79]

131.    On March 25, 2019, the three-person executive committee of the Non-Profit, consisting of Lenaz, Camenzuli and Janowski illegally attempted to dissolve the Non-

---

[72] Contested by Plaintiff and Counter-Defendants.
[73] Contested by Plaintiff and Counter-Defendants.
[74] Contested by Plaintiff and Counter-Defendants.
[75] Contested by Plaintiff and Counter-Defendants.
[76] Contested by Plaintiff and Counter-Defendants.
[77] Contested by Plaintiff and Counter-Defendants.
[78] Contested by Plaintiff and Counter-Defendants.
[79] Contested by Plaintiff and Counter-Defendants.

Profit board of directors because they refused to approve the license agreement with ETDO.[80]

132.    The Non-Profit board rejected this illegitimate action by the executive committee. The board and executive committee agreed to jointly meet with legal counsel to discuss scenarios for restructuring that would allow the Non-Profit to expand to Birmingham.[81]

133.    Instead of honoring the agreement to jointly meet with legal counsel, Lenaz sought legal counsel for ETDO alone.[82]

134.    At the May 13, 2019 Non-Profit board meeting, the board decided to extend the 2018-2019 season (which ordinarily would have ended on May 31, 2019) through August 31, 2019, including the terms of office of the board of directors, to allow restructuring discussions to occur.[83]

135.    Lenaz and Camenzuli's terms expired in May 2019 and Janowski had served out her term as secretary but was to remain on the board for another year.[84]

136.    Non-Profit Members had the option to pay dues on June 1, 2019 or wait until the start of the 2019-2020 season on September 1, 2019 to pay dues and still be members in good standing.[85]

137.    At the time of the events at issue, the individual Defendants were all members of the Non-Profit in good standing and continue to be members in good standing.[86]

---

[80] Contested by Plaintiff and Counter-Defendants.
[81] Contested by Plaintiff and Counter-Defendants.
[82] Contested by Plaintiff and Counter-Defendants.
[83] Contested by Plaintiff and Counter-Defendants.
[84] Contested by Plaintiff and Counter-Defendants.
[85] Contested by Plaintiff and Counter-Defendants.
[86] Contested by Plaintiff and Counter-Defendants.

138.    Elections were held on July 25, 2019 and Defendants Rossi, Naquin and Hudak were elected to fill the Non-Profit executive committee positions of Camenzuli, Lenaz, and Janowski.[87]

139.    Lenaz and Camenzuli asserted that they would refuse to step down from their Non-Profit executive committee positions at the end of their terms on September 1, 2019.[88]

140.    On August 21, 2019, Lenaz and Camenzuli in their dual roles as executive committee members of the Non-Profit and owners of ETDO, along with their attorney, presented a proposed licensing agreement to the board.[89]

141.    Lenaz and Camenzuli for years were officers of the Non-Profit and never made any claim to the ownership of Disco Amigos marks.[90]

142.    Only when Lenaz and Camenzuli's terms as officers of the Non-profit were coming to an end  did they make any claim to Disco Amigos marks.[91]

143.    ETDO attempted to dictate that the Non-Profit board must accept and sign the licensing agreement, but the board refused.[92]

144.    Although Non-Profit executive members Lenaz, Camenzuli, and Janowski were in favor of the license agreement with ETDO, two of the three votes were tainted because Lenaz and Camenzuli, who had not abstained from the vote, had direct conflicts of interests.[93]

---

[87] Contested by Plaintiff and Counter-Defendants.
[88] Contested by Plaintiff and Counter-Defendants.
[89] Contested by Plaintiff and Counter-Defendants.
[90] Contested by Plaintiff and Counter-Defendants.
[91] Contested by Plaintiff and Counter-Defendants.
[92] Contested by Plaintiff and Counter-Defendants.
[93] Contested by Plaintiff and Counter-Defendants.

145.     Thereafter, Lenaz and Camenzuli threatened again to dissolve the Non-Profit board and also the entire 501(c)(7) organization if the Non-Profit did not sign the licensing agreement, stating as a basis Bylaw 8.5.1.[94]

146.     Bylaw 8.5.1 of the Non-Profit merely sets forth the percentage of votes needed for the Executive Committee to take action, but does not empower it to take any actions.[95]

147.     ETDO filed applications for registration of the DISCO AMIGOS marks with the United States Patent and Trademark Office on August 23, 2019, making false claims regarding ownership of the mark.[96]

148.     The Non-Profit continues to operate as it always had, exercising its rights to utilize and display their DISCO AMIGOS name and logo and to carry on activities as usual.[97]

149.     Individual defendants Michele Rossi, Michele Hudak, Marisa Naquin, Alfredo Cruz, Sonya Bourgeois, Lisette Bayle, and Renee Pastor are not individually liable for any acts alleged because they at all times acted in their roles as officers, board members, agents, and members of the Non-Profit and took no actions on their own behalf.[98]

150.     In the State Court petition, Lenaz and Camenzuli alleged that they are the owners of DISCO AMIGOS' intellectual property and did not represent to the Court or to defendants that Lenaz and Camenzuli had assigned their ownership interest to ETDO in January 2015, nor was ETDO made a party to the State Court action.[99]

---

[94] Contested by Plaintiff and Counter-Defendants.
[95] Contested by Plaintiff and Counter-Defendants.
[96] Contested by Plaintiff and Counter-Defendants.
[97] Contested by Plaintiff and Counter-Defendants.
[98] Contested by Plaintiff and Counter-Defendants.
[99] Contested by Plaintiff and Counter-Defendants.

151.     ETDO filed the instant Complaint on October 18, 2019, for the first time alleging that it is the owner of the name DISCO AMIGOS and the logo.[100]

**9.     Single Listing of Contested Issues of Law**

The parties jointly provide the following single listing of contested issues of law for purposes of trial.

1.     Whether Plaintiff established ownership in a legally protectable mark.

2.     Whether Plaintiff showed infringement by demonstrating a likelihood of confusion under the Lanham Act.[101]

3.     Whether Jerry Lenaz and Francois Camenzuli were the first individuals who used the trademark and logo in commerce.

4.     Whether Jerry Lenaz and Francois Camenzuli demonstrated adoption of the mark and public use of the mark sufficient to prove ownership.

5.     Whether advertising, publicity, and solicitation sufficient met the public identification and use requirement.

6.     Whether an implied non-exclusive license existed between Jerry Lenaz and Francois Camenzuli and the Defendant, DASAPC.

7.     Whether the implied license was revocable and exchanged with consideration.

8.     Whether the rights to the logo and trademark were assigned to Plaintiff.

9.     Whether Defendants infringed on the trademark and logo.

---

[100] Contested by Plaintiff and Counter-Defendants.

[101] A party alleging trademark infringement of an unregistered mark, like ETDO here, must show: (1) ownership in a legally protectable mark, and (2) a likelihood of confusion in the minds of potential customers caused by the infringer's use of the mark. See *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co*., 550 F.3d 465, 474 (5th Cir. 2008). Ownership of a mark is established by use in the market, not by registration. See *Smack Apparel*, 550 F.3d at 475; *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990).

10.    Whether Defendants engaged in unfair and deceptive practices in violation of Louisiana Unfair Trade Practices Act.

11.    Whether Plaintiff is entitled to actual damages, enhanced profits, damages, and attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

12.    Whether the Non-Profit established that it was first to (1) use or display the mark in the sale or advertising of services and (2) render the services in commerce.

13.    Whether the Non-Profit showed continuous use of the marks in commerce.

14.    Whether the Non-Profit showed that the objectively manifested intent of the parties was that the DISCO AMIGOS name and logo would be used to name the Disco Amigos Social Aid and Pleasure Club, not by Lenaz and Camenzuli personally.

15.    Whether the Non-Profit demonstrated that the public associates the DISCO AMIGOS marks with the Disco Amigos Social Aid and Pleasure Club.

16.    Whether the Non-Profit demonstrated that the public looks to the Disco Amigos Social Aid and Pleasure Club to stand behind the quality of services rendered under the marks.

17.    Whether the Non-Profit showed "passing off" by ETDO under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

18.    Whether the Non-Profit showed that ETDO's actions constitute willful and actionable unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

19.    Whether the Non-Profit showed that ETDO's actions constitute unfair competition and false advertisement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

20.     Whether the Non-Profit showed that it is entitled under Section 35 of the Lanham Act, 15 U.S.C. § 1117, to recover (a) ETDO Defendants' profits and (b) all costs associated with bringing this action.

21.     Whether the Non-Profit is entitled under Section 35 of the Lanham Act 15 U.S.C. § 1117 to recover treble damages and reasonable attorney's fees incurred as a result of ETDO's willful and intentional acts that make the case exceptional.

22.     Whether the Non-Profit showed that ETDO acted in violation of LA. Rev. Stat. 51:1405.

23.     Whether the Non-Profit is entitled to damages as a result of ETDO's violations of LA. Rev. Stat. 51:1405.

24.     Whether the Non-Profit is entitled to recover (a) attorneys fees and (b) all costs associated with bringing the action under Subsection A of LA. Rev. Stat. 51:1409.

25.     Whether the Non-Profit showed that ETDO caused injury to business reputation under LA. Rev. Stat. 51:223.1.

26.     Whether the Non-Profit t is entitled to enjoin and restrain ETDO's using, practicing, and attempting to use DISCO AMIGOS marks to prevent further violations of law.

27.     Whether the Non-Profit showed that ETDO engaged in false advertising under LA. Rev. Stat. 51:411.

28.     Whether the Non-Profit is entitled to penalties against ETDO outlined in Subsection E of LA. Rev. Stat. 51:411.

29.     Whether the Non-Profit showed that ETDO engaged in negligent interference under LA. Civ. Code art. 2315.

30.     Whether the Non-Profit is entitled to injunctive relief and to recover (a) all damages sustained by DISCO AMIGOS, (b) all attorney fees, and (c) all costs associated with bringing this action.

31.     Whether Lenaz and Camenzuli breached their fiduciary duties and duties of care to DISCO AMIGOS constituting gross negligence entitling DISCO AMIGOS to injunctive relief and damages.

32.     Whether the Non-Profit showed that it is entitled to a declaration that the terms of office of Lenaz and Camenzuli expired on August 31, 2019, and that the Non-Profit is entitled to an accounting of ETDO's profits, damages and costs caused by Lenaz and Camenzuli.

33.     Whether the Non-Profit has shown that it has the exclusive right to use and register the DISCO AMIGOS name and logo.

34.     Whether ETDO's federal applications for registration of DISCO AMIGOS marks are *void ab initio.*

35.     Whether the Non-Profit has shown that ETDO should be enjoined for applying for registration of any trademark or service mark, trade name, or domain name containing DISCO AMIGOS name or logo or any derivation or colorable imitation thereof or any mark similar thereto.

36.     Whether the Non-Profit is entitled to an order that ETDO assigns U.S. Service mark application Serial No. 88/591,114 to the Non-Profit such that the Certificate of Registration, once issued, identifies the Non-Profit as the rightful owner of service mark DISCO AMIGOS.

37.     Whether Non-Profit is entitled to an order that ETDO assigns U.S. Service mark application Serial No. 88/591,141 to the Non-Profit such that the Certificate of Registration, once issued, identifies the Non-Profit as the rightful owner of service

38.     Whether individually named Defendants, Alfredo Cruz, Michele Rossi, Michele Hudak, Marisa Naquin, Sonya Bourgeois, Lisette Bayle, and Renee Pastor are not proper parties to the action and should be dismissed.

10.     **Trial Exhibits**

The parties' trial exhibits and objections thereto are attached as Exhibit 1. The parties reserve the right to offer into evidence any and all exhibits identified in the opposing party's list of trial exhibits.

11.     **Proposed Deposition Testimony Designations**

A.      **Plaintiff's and Counter-Defendant's Deposition Testimony Designations**

Plaintiff does not currently anticipate calling any witnesses through deposition testimony. Plaintiff reserves the right, however, to use deposition testimony for impeachment, in case a deposed witness is unavailable or for other appropriate purposes.

B.      **Defendants/Counterclaimant's Cross-Designations**

Not applicable unless Plaintiff designates deposition testimony after the date of this Order.

C.      **Defendants/Counterclaimant's Deposition Testimony Designations**

Defendants/Counterclaimant does not currently anticipate calling any witnesses through deposition testimony.  Defendants/Counterclaimant reserves the right, however, to use deposition testimony as well as any certified transcripts of hearings held in the Civil District Court for the Parish of Orleans in Case No. 2019-9947 for any purpose including impeachment.

      D.     **Plaintiff's Cross-Designations**

        Not applicable.

**12.    Charts/Graphs/Models/Schematic Diagrams for Opening/Closing Statements**

        The Plaintiff anticipates using charts, graphs, models, schematic diagrams or similar objects in opening statements or closing arguments.  Defendants and Counterclaimant object to this broad and vague listing and reserves the right to object to these exhibits once they have been specifically identified and provided to Defendants and Counterclaimant.

**13.    Trial Witnesses**

      A.     **Plaintiff's Witnesses**

1. Gerald "Jerry" Lenaz, member of ETDO Productions, LLC, Executive Committee member of DASAPC, and Counterdefendant will testify about all of the claims asserted by Plaintiff and respond to counterclaims.

2. Francois Camenzuli, member of ETDO Productions, LLC, Executive Committee member of DASAPC and Counterdefendant will testify about all of the claims asserted by Plaintiff and respond to counterclaims.

3. John Tiblier, member of ETDO Productions, LLC will testify regarding the assignment to Plaintiff of the rights to the trademark and logo.

4. Bruce Lin, member of ETDO Productions, LLC and former Executive Committee member of DASAP will testify to the board responsibilities, and the service agreement with ETDO.

5. Kim Janowski, Board Member and Executive Committee Member of Disco Amigos Social Aid and Pleasure Club will testify as to the payment for services contract with ETDO, and the relationship with ETDO.

6. Roy Guercio, former Board Member of Disco Amigos Social Aid and Pleasure Club will testify regarding the accounting, restructuring of the Nonprofit, and relationship between ETDO, DASAPC and the Birmingham members.

7. Andrea Heming, Noisician Coalition representative will testify about purchasing Disco Amigo performances and services prior to the formation of DASAPC.

8. Kelly Camenzuli, fact witness will testify regarding creation of trademark and logo and use in commerce including purchase of first T-shirts.

9. Kristy Hitchcock, former member of the  Disco Amigos Social Aid and Pleasure Club will testify regarding confusion caused by the Defendants' infringement.

10. Toni Dennis, former member of the Disco Amigos Social Aid and Pleasure Club will testify regarding the licensing agreement for the trademark, logo, and confusion the infringement has caused her and the Birmingham members.

11. Gerald C. Lenaz, fact witness- will testify regarding creation of trademark and logo.

12. Chris Herrington, fact witness-will testify regarding creation of trademark and logo and use in commerce.

13. Lloyd Frischhertz, fact witness or a representative of Krewe of Tucks who will testify regarding the confusion due to the trademark infringement.

14. Brian Kern, fact witness of Krewe of Boo will testify regarding confusion due to trademark infringement.

15. Adele Tiblier, fact witness will testify regarding creation of trademark and logo and use in commerce including social media posts the ETDO van and formation.

16. Representative of Krewe of Nyx fact witness will testify regarding confusion due to trademark infringement.

17. Representative of Krewe of Carrollton fact witness will testify regarding confusion due to trademark infringement.

18. Representative of 610 Stompers fact witness will testify regarding creation of trademark *Disco Amigos* and logo.[102]

19. Representative of Lucha Krewe fact witness will testify regarding confusion due to trademark infringement and use of ETDO services.

20. FRCP 30(b)(6) witnesses identified by the Defendant, Disco Amigos Social Aid and Pleasure Club.

21. Any person listed, called, or sought to be called by any other party.

22. Any and all individuals necessary for impeachment purposes.

**Expert Witness**

23. Robert V. Luby, III, LLC, Expert Witness per Designation. Plaintiff counsel certifies that his report has been submitted in accordance with prior court orders.

**B.**     **Defendant/Counterclaimant's Witnesses**

1. Michele Rossi, member of DISCO AMIGOS since 2016, board of directors 2017 to present, current President of board of directors, will testify regarding Plaintiff's claims and DISCO AMIGOS' counterclaims.

2. Michele Hudak, member of DISCO AMIGOS since 2014, board of directors 2016-2018, 2019-present, current Secretary of board of directors, will testify regarding Plaintiff's claims and DISCO AMIGOS' counterclaims.

---

[102] Defendants' Objection: relevance, hearsay.

3. Marisa Naquin, member of DISCO AMIGOS since 2016, board of directors 2018 to present, current Treasurer of board of directors, will testify regarding Plaintiff's claims and DISCO AMIGOS' counterclaims.

4. Alfredo Cruz, member of DISCO AMIGOS since 2016, board of directors 2017 to present, current member of board of directors, will testify regarding Plaintiff's claims and DISCO AMIGOS' counterclaims.

5. Sonya Bourgeois, member of DISCO AMIGOS since 2017, board member 2018-2019, and current member, will testify regarding Plaintiff's claims and Disco Amigos' counterclaims.

6. Lisette Bayle, member of DISCO AMIGOS since 2016, board member 2018-2019 and current member, will testify regarding Plaintiff's claims and Disco Amigos' counterclaims.

7. Renee Pastor, member of DISCO AMIGOS since 2016_and to date, will testify regarding the allegations made against her by Plaintiffs.

8. Angela McGurk, past member of DISCO AMIGOS and graphic artist will testify regarding her experiences assisting in marketing of DISCO AMIGOS' brand and designing and producing advertising materials for the DISCO AMIGOS organization, her understanding of ownership of the name and logo through the statements and actions of members and board members.

9. Denny Bro, attended DISCO AMIGOS first dance class on April 19, 2012, paid dues in June 2012, original member of board of directors, serving from 2013-2015, obtained appearances for DISCO AMIGOS with Girls on the Run and facilitated forging of contracts between DISCO AMIGOS and Krewe of Nyx, will testify regarding ETDO's relationship with DISCO AMIGOS and lack of disclosure

regarding Lenaz, Camenzuli and ETDO's claims of ownership of intellectual property and ETDO's misrepresentations to clients regarding same,   facts related to her ongoing membership in DISCO AMIGOS.

10. Roy Guercio, accountant and member of board of directors of DISCO AMIGOS 2018 until resignation in 2019, will testify regarding facts related to breaches of duties of care and fiduciary duties by the executive committee of DISCO AMIGOS, his membership, duties and function of the board of directors, budgetary and financial issues, the dispute leading to this litigation and his association with DISCO AMIGOS Birmingham.

11. Tom Abernathy, active DISCO AMIGOS member 2016 to present and former chairman of Mardi Gras committee, will testify as to DISCO AMIGOS' contracts with Mardi Gras krewes, members' efforts in planning and carrying out Mardi Gras contracts, failure of ETDO to provide labor required under production services agreements, use of DISCO AMIGOS members to fulfill ETDO-DISCO AMIGOS production services agreement at no cost to ETDO.

12. Julia Turkevich, active member of DISCO AMIGOS 2018 to present, will testify regarding her participation in eliciting sponsorship for DISCO AMIGOS organization, her activities on the DISCO AMIGOS Mardi Gras committee, her understanding of ownership of the name and logo.

13. Kim Janowski, board of directors of DISCO AMIGOS 2016-2017 and executive committee member at the time of the dispute will testify regarding her admissions made in writing on behalf of the executive committee.

14. Bruce Lin, member and co-owner of ETDO, on first board of directors of DISCO AMIGOS 2013-2014 and executive committee member 2014-2018, will testify

regarding facts related to the organization and relationship between DISCO AMIGOS and ETDO.

15. John Tiblier, member and co-owner of ETDO, first president of DISCO AMIGOS board of directors and board member 2014-2016 will testify regarding facts related to the organization and the relationship between DISCO AMIGOS and ETDO.

16. Representative of Krewe of Nyx, will testify regarding confusion due to trademark infringement.

17. Representative of Krewe of Poseidon, will testify regarding confusion due to trademark infringement.

18. Corporate representatives of ETDO productions, LLC on cross-examination as permitted.

19. Jerry Lenaz, on cross-examination as permitted.

20. Francois Camenzuli on cross-examination as permitted.

21. Any witness and expert listed, called, or sought to be called by any other party.

22. Any witness identified in discovery by either party.

23. Any and all individuals necessary for impeachment purposes.

**Expert Witness**

1. J. Stuart Wood, Ph.D., Expert Witness per Designation. Defendants/Counterclaimant's counsel certifies that his report has been submitted in accordance with prior court orders.

The witness lists were filed in accordance with the Federal Rules of Civil Procedure and prior Court Orders. No other witnesses shall be allowed unless their addition is agreeable to all

parties and does not affect the trial date. This restriction will not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated.

**14.      Jury/Non-Jury Trial**

This case is a Non-Jury case.

**15.      Trial of Liability/Damages**

The issue of liability will or will not be tried separately from that of damages.

**16.      Other Matters to Expedite a Disposition of the Case**

The parties are not currently aware of any other matters that might expedite a disposition of the case other than Defendants' pending motions in limine.

**17.      Trial Date and Estimated Trial Time**

Trial Date is October 26, 2020.

**18.      Parties' Appearance at Pre-Trial Conference**

This Pre-Trial Order has been formulated after a conference in Court at which counsel for the respective parties have appeared by telephone. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**19.      Settlement Discussions**

The possibility of settlement of this case was discussed prior to the filing of the Complaint but has not been discussed by the parties since late 2019.

/s/ Jessica Vasquez
Jessica Vasquez, Esq.
Vasquez Law Office
*Counsel for Plaintiff*
400 Poydras Street, Ste. 900
New Orleans, LA 70130
Tel: (504) 571-9582
Fax: (504) 684-1449

/s/ Thomas S. Keaty
Thomas S. Keaty (#7666) – TA
Keaty Law Firm LLC
Counsel for Defendants and Counterclaimant
365 Canal Street, Ste. 2410
New Orleans, LA 70130
Tel: (504) 524-2100
Fax: (504) 524-2105


/s/ Steven M. Hannan
Steven M. Hannan (#33878)
Hannan, Giusti & Hannan, LLP
Counsel for Defendants and Counterclaimant
2201 Ridgelake Drive
Metairie, LA 70001
Tel: (504) 831-5300 Ext. 127
Fax: (504) 831-3110


**SO ORDERED:**

_____
HONORABLE JUDGE IVAN LEMELLE
UNITED STATES DISTRICT COURT